MORGAN *v.* RUST *et al.*

Notwithstanding the intimation in *Dotterer* v. *Bowe,* 84 *Ga.* 769, to the effect that one who held an unpaid claim against a county, which was not for official fees or salary, might under certain circumstances be compelled to assign such claim to his own creditor, the better opinion seems to be that if the debt due by the county was for public work, payment by it to its creditor should not be thus prevented. The same public policy which exempts a county from the process of garnishment forbids that it should in any manner be interfered with in settling for necessary public work even after the same has been completed. To hold otherwise would at least tend to hamper counties in making contracts for services beneficial to the public.

Argued January 19,—Decided March 3, 1897.

Equitable petition. Before Judge Lumpkin. Fulton superior court. September term, 1896.

*Maddox & Terrell,* for plaintiff. *B. H. & C. D. Hill, L. Z. Rosser* and *J. A. Anderson,* for defendants.

FISH, Justice.

In this case, the plaintiff filed his petition, in the superior court, against Rust and the county of Fulton, alleging that he was a judgment creditor of Rust; that Rust was insolvent; that the county of Fulton owed Rust $500.00 "for services rendered said county as an expert accountant to examine the books and accounts of the several county officials who handle and manage the finances of the county"; that the payment of this sum to Rust had been recommended by the grand jury of said county; that the petitioner was wholly without remedy at law in the premises; and that the debt due by the county to Rust was not, under the law, exempt against the payment of the debt due the plaintiff. The plaintiff prayed that the county, through its board of county commissioners, be directed to pay the $500.00 which it owed Rust into the registry of the court; that said sum be adjudged to be subject to the plaintiff's execution and be-

paid to him upon his judgment; that the county be enjoined from paying the money to Rust, and Rust be enjoined from disposing of his claim against the county and from attempting to collect it. Further, that if the court should be of opinion that said sum could neither be reached by garnishment nor equitable petition, the court should, by proper order and decree, direct and require Rust to assign and transfer to the plaintiff his claim against the county. A temporary restraining order was granted, which was afterwards modified by providing that it should be revoked upon Rust's giving a bond to conform to such judgment as might be rendered on the hearing of the application for injunction. Subsequent to this Rust gave such bond. By amendment to the petition, the plaintiff alleged that the services rendered by Rust to the county had been fully performed, and that all that remained to be done was the approval by the county of Rust's claim and the payment of the same. Process was prayed against both Rust and the county of Fulton. Rust filed a demurrer to this petition, upon the ground that on the facts as alleged the plaintiff was not entitled to the relief prayed for against him, nor against the county. Upon the hearing for the temporary injunction, the demurrer was sustained and the injunction denied, to which ruling the plaintiff excepted.

There is a regular system provided by law for the levying of county taxes and the payment of county debts. If upon the legal ascertainment, in a trial of a case of this character, that a county is indebted in a given sum to the debtor of the plaintiff in the suit, it can be, by the mandate of the court, compelled to at once pay that sum into the registry of the court, then a county may be compelled, by the order of the court, to disregard this system in the payment of its debts. Sections 397 and 404 of the Political Code specify for what purposes county taxes shall be assessed. Section 398 thereof provides, that "when debts have accumulated against the county so that 100 per cent. on the State tax, or the amount

specially allowed by local law, cannot pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least 25 per cent. every year. Section 405 provides that "as soon as the county tax is assessed for the year, it shall be done by order of such ordinaries and entered on their minutes, which must specify the per cent. levied for each specific purpose." And where an extra tax is levied the order should specify the object and purposes for which it is levied. *Barlow* v. *Ordinary,* 47 *Ga.* 639. Section 407 says that "taxes raised for educational purposes, or the support of the poor, or any other specific purpose, must be used for such purpose respectively, and none other." Section 361 provides that "the ordinaries must audit all claims against their respective counties, and every claim, or such part thereof as may be allowed, must be registered, and he or his clerk must give the claimant an order on the treasurer for the same, and in the order he shall specifically designate upon what particular fund such order is drawn, and out of which payment is to be made." Section 463 provides the order in which the county treasurer shall pay the debts of the county. Section 465 declares that "if any person holding county orders shall fail to present them by the first of December of each year to the county treasurer for payment, they shall be postponed to all orders which were so presented and not paid for want of funds." These provisions of the code are "of great importance, and ordinaries and treasurers who neglect to conform to this salutary law are greatly to blame." (*Mitchell* v. *Speer,* 39 *Ga.* 56, 59.) In the case of *Dotterer* v. *Bowe,* 84 *Ga.* 769, this court held that "Without express authority by statute, a county is not subject to garnishment. To imply such authority is contrary to public policy." In delivering the opinion of the court in that case, Blandford, J., said, "We think the system provided by law for the payment of claims against counties must be adopted in all cases. We do not think that this system can be preserved by allowing

counties to be garnished." If this system cannot be pre- served by allowing counties to be garnished, most assuredly it cannot be preserved if a county, upon such averments as are contained in this petition, can be compelled by the court to pay money due by it to one of its creditors into the regis- try of the court. This would be equivalent to compelling a county to pay a debt held against it, regardless of the class of the claim, the condition of the fund from which it ought legally to be paid, and the order of payment of county in- debtedness as provided by law. This cannot be done by mandamus. *Mitchell* v. *Speer*, supra. "A county treas- urer's authority and duty are governed by law, and he can- not be made to diverge from his rightful official course of action by court orders at the instigation of litigants, in the absence of statutory authorization, and to the detriment of the public welfare, any more than a State officer could thus be turned from the line of his public duty." Waples on At- tachment and Garnishment, 2 ed. §433. The judge of the superior court has no more authority to disregard the system established by law for the payment of claims against coun- ties than the ordinary, the county commissioners, or the county treasurer. The law has placed the responsibility for the carrying out of this system upon the respective county officials charged with its enforcement and preservation, and the judge of the superior court has no authority, by a per- emptory order, to interfere with it. If to this view of the case it should be suggested that the court need not pass such an order as is asked for in this case until it has judicially as- certained, by a trial of the case, that the county can be com- pelled to pay the money into court without affecting or dis- arranging the system provided by law for the payment of county debts, a sufficient reply, in the present case, would be that there is no allegation of this character in the petition, nor even a suggestion or intimation to this effect, but the petition simply prays that the county be directed to pay the money due by it to Rust into the registry of the court.

But suppose the petition called upon the county to show cause why it should not pay the sum which the plaintiff claims it owes Rust into the registry of the court. Then all the considerations affecting public policy which, in cases of attempted garnishments, exempt a county from being "burdened with care and attention respecting suits in which the public, as such, has no interest" (*Born* v. *Williams*, 81 *Ga.* 798) would apply to a case of this character. In *Holt* v. *Experience*, 26 *Ga.* 113, and again in *McLellan* v. *Young*, 54 *Ga.* 399, this court decided that a municipal corporation is not liable to be garnished for the salaries of its officers; and in *Leake & Vandivander* v. *Lacey*, 95 *Ga.* 747, it was decided that it is not subject to be garnished for money due by it to a contractor for constructing public work, although such work had been fully completed before the garnishment was served. In the case in the 54th *Ga.*, McCay, J., says, "The exemption is not for the benefit of the officer, but because the public is not to be harassed and inconvenienced by petty suits in the shape of garnishments and the efficiency of its servants interfered with by any uncertainty whether when the salary is due it will be paid." In speaking of the established rule which exempted the salaries of such officers from garnishment, he says, "The protection was not to the officer, but to the public, and was intended to prevent confusion and petty litigation, and to secure to the public the faithful and diligent performance of official duties by its officers." The reasons for exempting a municipal corporation from process of garnishment are also well and forcibly stated by Lumpkin, J., in the opinion in *Connolly* v. *Thurber-Whyland Co.*, 92 *Ga.* 651, and *Leake & Vandivander* v. *Lacey*, supra, and are applicable to the present case. In Knox *v.* Erie City, 28 Pa. St. 175, Knox, J., delivering the opinion, says, "The performance of public duties is sufficiently difficult on the part of fiscal officers, without further complicating them by requiring such officers to become parties to questions and rights litigated in our

courts of justice." In Bulkley v. Eckert, 3 Barr, 369, money due a school-teacher was attached in the hands of the treasurer of a township board of school directors. The Supreme Court of Pennsylvania decided that this could not be done; and in the opinion in the case, delivered by Sergeant, J., it is said, "Great public inconvenience would ensue if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue, from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on." In Mayor of Mobile v. Rowland, 26 Ala. 498, where it was decided that "process of garnishment does not lie against a public municipal corporation, to subject the salary of one of its police officers," Chilton, C. J., said: "This is a public municipal corporation; its officers are public servants, and the public is entitled to their services, in the discharge of their duties. If they could be made parties to controversies between debtor and creditor— if these officers may be summoned to attend any and all of the courts having cognizance of garnishments throughout the State, and are to appear in person at the bar, awaiting such trials, on pain of having judgment by default go against the corporation, the public interest must necessarily suffer." In McDougal v. Supervisors, 4 Minn. 130, where garnishment proceedings were commenced against a county, Flandrau, J., delivering the opinion, says, "The varied relations which such bodies, through their officers, hold toward individuals as their debtors, would render them liable to be constantly attacked with such process, and would very materially embarrass them in the performance of their official duties. If they are subject to such suits, they are bound to give them the same attention which is required of private individuals, and this would involve their attendance upon distant courts, and the consequent absence from their respective offices. . . Public policy cannot tolerate such

an obstacle to the exercise of official duties as this rule would
necessarily ·be, should it be allowed to obtain."

.From these decisions, and many others that might be·
quoted to the same effect, we are of opinion that the county
commissioners of Fulton ought not to be compelled to ap-
pear in court, to answer a petition of this character, where
they might and probably would, for the protection of the·
county and themselves, have to take part in the litigation.
We are clearly of opinion that the county commissioners
could not have been legally compelled, by order of the
court, to pay any money which the county of Fulton may·
have owed Rust into the registry of the court.

The next question is whether or not Rust could be com-·
pelled by the court to assign or transfer his claim against·
the county to his judgment creditor, the plaintiff.   While,
from the standpoint of the public interest, the argument
against the authority of the court to compel him to make the
assignment or transfer asked for is not altogether as strong·
as the one against the proposition that we have just been.
considering, we think that the same public policy which ex-
empts a county from process of garnishment forbids that
it should, in any manner, be interfered with by the courts
in settling for necessary public work, even after the same has
been completed; and that to hold otherwise would at least
tend to hamper counties in making contracts beneficial to the
public.   In *Born* v. *Williams*, 81 *Ga.* 798, Chief Justice·
Bleckley, in speaking of the decisions of the courts of this
country which hold that municipal corporations are not sub-
ject to the process of garnishment, says: "The strength of
the argument, as commonly presented, involves two consid-
erations affecting public policy.   The first is, that officers
charged with municipal functions should devote their time
and labor to the public service, and not be burdened with
care and attention respecting suits in which the public, as
such, has no interest."   (This consideration we have already
discussed.)   "The second consideration is, that to arrest or·

delay payments by a city for labor, services, or supplies, would seriously disturb, and sometimes wholly obstruct its arrangements for procuring these necessaries, lead to frequent changes of employees and contractors, cause unfinished work to be abandoned or suspended for lack of prompt payment, etc., etc." It is to the interest of the public that the several counties of the State should have the largest field possible from which to select competent, reliable and skilled men to perform services which are intended to be for the public benefit. If one who has performed such services for a county can be, at the instance of his creditor, compelled to transfer his claim for compensation for such services to such creditor, then persons who are so unfortunate as to be in debt are not likely to apply for such public employment, nor to accept it if tendered to them. For the apprehension that some vigilant and wide-awake creditor may step in and collect the amount which may be due him by the county will be reasonably certain to prevent a person so situated from seeking or accepting employment by the public officials. So that the counties of the State, especially those which have comparatively few inhabitants, might be, at times, greatly hampered in their efforts to obtain the kind of services which the public interest might require, and competition being by this means lessened, they might have to pay more for the same quality of services than they otherwise would. In the same way, and for the same reasons, they might be greatly embarrassed in making contracts for public improvements and for necessary supplies. Under our law, much the greater portion of the work in the way of public improvements, by counties, such as the building of court-houses, jails, bridges, poorhouses and the like, and in repairing the same, is let out by the proper county authorities to the lowest bidder, and it is to the interest of the public that all those who would make competent and reliable contractors for such work should bid for the same. In addition to these considerations, it appears, from the allegations

of the petition, that the amount due by the county to Rust was "for services rendered said county as an expert accountant to examine the books and accounts of the several county officials who handle and manage the finances of the county"; and that "the payment of this sum to the said Rust was by the grand jury recommended on January 27th, 1896." From these allegations, it is evident that the services rendered by Rust were such as, under the law of this State, ordinarily devolve on the grand jury and are usually performed by that body. The law makes it the duty of the grand jury to inspect and examine the offices, books, papers, etc., of certain county officers. To assist the grand jurors in the discharge of these public and important duties, they are authorized to appoint one or more citizens of the county to perform certain of these duties for them, during the vacation of the superior court. Penal Code, §§836 and 837. Such persons, by virtue of such appointment, have certain powers conferred upon them. Penal Code, §838. Such persons so appointed, for the purposes of their employment, take the place of the grand jurors themselves, the grand jury performing these public duties through these citizens. During the time of their employment and while engaged in this service, they are, for this purpose, public officers. In the language of the trial judge in this case, "The compensation of such persons is not an ordinary debt, but in the nature of a salary; and it is an expense of discharging a governmental function." And he forcibly adds, "If the county can be interfered with in paying such official expenses, the salaries of officers might as well be attached in the same way." We do not think it would be seriously contended that if the duty performed by Rust in this case had been performed by the grand jury through a committee of its members duly appointed by that body, the per diem earned by any member of such committee while performing this public duty could be seized by the superior court and paid to a creditor of such grand juror, or that the court could compel the grand juror

himself to pay this part of his compensation to such creditor.
While it is not clear, from the allegations of the petition,
whether Rust was appointed and employed by the grand
jury or not, from the statement in the petition that the grand
jury had recommended the payment of the amount due
him, and the further consideration that the services rendered
by him were such as the law devolves upon the grand jury,
and that the grand jury was specially authorized by the law
to make such an appointment, this seems highly probable.
But as the petition states that the recommendation of the
grand jury for the payment of Rust for these services "will
be found of record in this court," we presume, from the
reasons given by the trial judge for his decision, that he as-
certained from the record that Rust was appointed and em-
ployed by the grand jury. If he was employed by the grand
jury to discharge this important public duty which the
grand jury would otherwise have had to perform, he would
be, while engaged in this employment, simply a substitute
for a committee from the grand jury, doing the same work
which is ordinarily performed by the grand jury. Such being
the case, we do not see why his salary for these services would
not be as fully protected from the process of garnishment,
or any substitute therefor, as that of a grand juror. Whether
he was appointed and employed by the grand jury or not,
he evidently rendered services to the county of Fulton
which ordinarily, by the laws of this State, fall to the lot of
grand jurors, and the expense incurred by the county for
such services was, in the apt language of the judge who
tried the case below, "an expense of discharging a govern-
mental function." For these reasons, in addition to the ones
already given, we think it might be safely held that the sal-
ary earned by Rust in this matter was neither subject to the
process of garnishment, nor liable to be impounded in court,
in order that his creditor might reach it and have it appro-
priated to the payment of his debt; and that Rust could not
himself be compelled to transfer his claim against Fulton

county to his creditor. The intimation by this court, in
*Dotterer* v. *Bowe*, 84 *Ga.* 769, that one who held an un-
paid claim against a county, which was not for official fees or
salary, might under certain circumstances be compelled to
assign such claim to his own creditor, seems to have been
based upon the decision of the Supreme Court of Minnesota
in the case of *Knight* v. *Nash*, 22 Minn. 454, which is the
only case to which our attention has been called, or that we
have been able to find, where such a ruling has been made.
That case arose under the statute of Minnesota authorizing
supplemental proceedings after judgment, and, in the lan-
guage of the court in that case, "the statute expressly au-
thorizes the judge to make an order, not only directing such
property of the judgment debtor as is not exempt from exe-
cution, in the hands of either himself or any other person,
to be applied to the satisfaction of the judgment, except
certain specified earnings of the debtor, but also any prop-
erty due to such judgment debtor." The statute also pro-
vided for the appointment of a receiver. The trial judge
ordered the defendant debtor to give the plaintiff an order
upon the city of St. Paul for the payment of his judgment
out of any moneys owed by it to said debtor, in default of
which the order was to operate as an assignment of the
claim to the plaintiff, who was appointed receiver; and upon
appeal the Supreme Court affirmed the judgment. In so
far as that decision is supported by the statutory law of
Minnesota, it is not applicable in this State, where we have
no statute authorizing supplemental proceedings after judg-
ment. To the extent that it holds that the reasons upon
which the rule that a debt due from a municipal corporation
cannot be reached by process of garnishment "have no ap-
plication to an order of this kind," we do not think it should
be followed by this court. For, as has been seen, we are of
opinion that there are considerations of public policy which
support the rule as to garnishment, which are equally ap-
plicable to, and should prevent the granting of, the kind of

an order which the plaintiff sought to obtain from the court in this case.

*Judgment affirmed. All the Justices concurring.*