## SAVANNAH STEAM RICE MILL CO. *v.* HULL *et al.*

Where a warehouse in which goods are stored is burned, and insurance companies which have issued policies upon the goods pay the owners thereof the full amount of the policies, and under an option in the contracts of insurance take possession of the damaged property, removing such parts as are salable and disposing of them, and allowing the unsalable parts to remain upon the premises, and the warehouseman is required by the municipal authorities of the city in which the warehouse is located to remove the goods remaining upon the premises, no equitable lien arises in his favor against the fund realized from the sale of the goods removed by the insurance companies, for the expense incurred by him in removing such as were valueless and unsalable.

Argued June 9, — Decided July 19, 1898.

Equitable petition. Before Judge Falligant. Chatham superior court. March term, 1897.

*Lawton & Cunningham* and *E. S. Elliott,* for plaintiff.
*Denmark, Adams & Freeman,* for defendants.

COBB, J. The Savannah Steam Rice Mill Company brought suit against Hull and Davant, alleging that its mill, granary, and storehouse were destroyed by fire; that at the time of the fire it had on storage for various parties large quantities of rice; that the building was entirely destroyed, and the rice was partially destroyed and became so mixed and commingled in consequence of the fire that it was impossible to identify the rice of the different parties; that certain persons, claiming to represent various insurance companies which had issued policies upon portions of the rice, immediately began, without its consent or knowledge, to remove the rice in its damaged and intermixed state and save such as was salable; that these persons were immediately notified that if they undertook to remove any part of the rice, they must remove it all and not leave the refuse on the premises; that a similar notice was also given to the agents of such of the insurance companies as were known to have policies upon the rice, and in the notices given it was stated that petitioner would charge against the insurance companies and against the fund arising from the sale of the rice the expense of removing the refuse from the premises. Petitioner attempted to sell this for the benefit of all concerned,

and, it not being marketable, a sale could not be made. The refuse being in a decaying condition, petitioner, under orders from the proper authorities of the City of Savannah, removed the same at an expense of $487.40. It is charged that a fund of about fifteen hundred dollars, representing the net amount realized from the sale of the rice which was removed by those representing the insurance companies, has come into the hands of the defendants, who are holding the same for the benefit of such parties as may be entitled thereto. The prayer of the petition was, that the claim of petitioner for the expense of removing the refuse rice be declared to be a lien upon the fund in the hands of the defendants. The defendants in their answer denied that plaintiff had any lien on the fund in their hands, or was entitled to charge against the fund the expense to which it had been put in removing the refuse rice. It was alleged that, as a committee selected to represent not only the insurance companies who had paid the insurance on the rice but also the owners of the uninsured rice, they removed from the plaintiff's mill all of the rice which was salable, and left in the mill all of the rice which had been rendered valueless by fire or water, and that they were holding the fund for the purpose of prorating it among the parties represented by them; that the rice in the mill was insured to its full value, and the full value was paid by the insurance companies represented by them ; that none of the policies involved made it the duty of the companies to take the damaged property when they paid up the loss in full, but gave them the option to take all or none of it; that when the property is so damaged that it becomes worthless they do not remove any part of it and are not expected to do so; that insurance companies do not exercise the option to take or remove the property not entirely destroyed by fire, unless they can realize on it; that it has been the custom for the company who insures the building to remove all debris and refuse material after a fire when the insurance companies have anything to do with the matter, and the companies insuring the stock or contents of the building are not required to do this.

Upon the trial there was evidence tending to establish the al-

legations in the petition, as well as evidence tending to establish the contention of the defendant. The policies of insurance on the rice were introduced in evidence, and it appeared that there was no requirement in them that upon payment of the loss the insurer should remove the rice, or, having undertaken the removal of a part, should remove the balance. The only clause in the policy which is material is as follows: "It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild or replace the property lost or damaged with other of like kind and quantity within a reasonable time, on giving notice, within thirty days after the receipt of the proof herein required, of its intention to do so; but there can be no abandonment to this company of the property described." There was a verdict for the defendants; and plaintiff's motion for a new trial being overruled, it excepted.

When the case was argued here, there was no authority presented on either side bearing directly upon the controlling question made in the record. We have been unable to find any. It seems to us that to properly determine the case it is necessary to ascertain what would be the rights of the parties if the owners of the building destroyed had had no insurance, and the owners of the contents were also without insurance on their property. The stipulations in the policies held by the owners of the contents can in no way bind the owners of the building or prejudice their rights. The sole purpose which they serve is to show that the representatives of the insurance companies were authorized to do that which it is claimed by the insurance companies the owners would have had a right to do if the contract of insurance had not been made. The case therefore resolves itself into a determination of the question as to whether a person who has deposited property in a warehouse has the right, after its destruction by fire, to remove from the premises such of his property as would be useful to him, and leave such as was damaged or made useless by the fire. A warehouseman has a lien upon the goods of his customers for the storage fees that have accrued upon them. Civil Code, §§ 2813, 2928, 2930. But we know of no law

which gives him a lien for anything except the reasonable hire represented by the proper storage fees. It was not contended that the plaintiff had any lien at law. The position taken by counsel for plaintiff in error in his argument in this court was that, under the facts of the case, equity would declare a lien in its favor. It does seem hard that the plaintiff, in addition to its loss by fire, should be compelled to bear the expense of removing from its premises the damaged goods of its customers; but such cases of hardship are not uncommon, and they belong to that class which neither law nor equity can relieve against. When the customer deposits his goods with the warehouseman, the latter agrees to keep them and return them upon payment or tender of reasonable storage fees. The customer has the right to go upon the premises of the warehouseman and remove his property whenever the sums due the warehouseman for hire are paid. That the warehouseman has lost his building by fire would not seem to interfere with this right of the customer, especially where the customer has lost a part of his goods by the same casualty. That the effect of the fire upon the customer is to damage part of his goods so that they would be valueless, and to leave another part that could be utilized, would not give the warehouseman any right to refuse to deliver such of the goods as the customer desires. That the refuse or worthless part was still left upon the premises of the warehouseman, and he was put to the expense necessary to remove the same, is simply one of the incidents of his business, and the burden must be borne by him, no matter how hard it might bear in a given case. If we were authorized to say that an equitable lien would arise in all cases where hardship would be the result if an equitable lien were not allowed to be set up, it might be that we would say in this case that the warehouseman should be paid his reasonable charges out of the fund realized from the sale of the articles which were saved. But "equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable." Civil Code, § 3923. Equitable liens can only be set up by reason of their analogy to a lien allowed under the same or similar conditions by the rules of law. Following these prin-

ciples, we can not see how the owner of a warehouse which has been destroyed by fire can be held to have an equitable lien upon that part of the goods of his customer which were saved, to reimburse him for loss on account of the removal by him of such as were damaged so . as to be unsalable. As under no circumstances could the plaintiff recover, and as the finding in favor of the defendants was the only proper verdict that could have been rendered under the law; any errors which may have been committed by the trial judge in the admission of testimony and in charging are immaterial.

*Judgment affirmed. All the Justices concurring.*