## McCONNELL v. FLOYD COUNTY et al.

HINES, J.   1. In the absence of statute, a county is not liable to a convict for injury sustained by him as a result of the negligence of a prison employee, nor for injury sustained by him as result of his confinement in prison quarters which are unhealthful or otherwise unfit, nor for lack of wholesome and nutritious food. *Gray* v. *Griffin,* 111 *Ga.* 361 (36 S. E. 792, 51 L. R. A. 131); *Wood* v. *Floyd County,* 161 *Ga.* 743 (131 S. E. 882); *Decatur County* v. *Praytor &c. Co.,* 163 *Ga.* 929 (137 S. E. 247). 21 R. C. L. 1182, § 19.

2. Persons having charge of chain-gangs of misdemeanor convicts shall keep a book in which shall be entered the names of the convicts under their charge, and at the end of each laboring day they shall record opposite the name of each his conduct during that day; and should it appear from this book that the conduct of any one has been good, and that he has been diligent in performing the work assigned to him, his time of service and confinement shall be shortened four days in each month for the time of sentence. Penal Code (1910), § 1179. The allegation in the petition, that the plaintiff's "term of four months, computed from October 7th, 1925, diminished by four days monthly, an allowance for good time, expired January 19th, 1926," is not sufficient to show that he was entitled to an allowance for good time under the above section of the Penal Code, it not being alleged that it appeared from the book therein required to be kept that the conduct of the plaintiff

---

Counties, 15 C. J. p. 571, n. 82; p. 572, n. 86 New; p. 664, n. 48.
Equity, 21 C. J. p. 195, n. 47; p. 196, n. 59; p. 197, n. 75.
Garnishment, 28 C. J. p. 58, n. 14; p. 174, n. 19.
Prisons, 32 Cyc. p. 331, n. 79; p. 332, n. 80.

had been good, and that he had been diligent in performing the work assigned to him.

3. Under a sentence of 12 months upon the chain-gang, with the right, after serving four months upon the chain-gang, to serve the remainder of the term outside of the chain-gang upon probation, the defendant is required to serve the four months in full, and is not entitled to an allowance for good behavior under the provisions of the Code section above referred to.

4. The liability of the county, if any, to the plaintiff for compulsory work on its public roads, after the expiration of his service of four months of his term on the chain-gang, depends upon whether or not he was entitled to the deduction of seven days for good behavior during said term of four months; and as we hold above that he was not entitled to such deduction, the petition makes no case of liability against the county for the services rendered during the said period of seven days.

5. Applying the above rulings, the court did not err in sustaining the county's demurrer to the petition.

6. The county authorities having control of convicts shall provide suitable places for their safe-keeping and their support by the county, and shall employ necessary overseers and guards for their safe-keeping and constant and diligent employment upon the public works. Penal Code (1910), § 1167.

7. The infraction of some public duty, by which special damage accrues to the individual, is a tort which entitles the injured individual to recover such damages. Civil Code (1910), § 4403.

8. If the county commissioners failed to perform the public duty resting upon them to erect suitable quarters for the safe-keeping and support of the county convicts under their control, they would be liable, if at all, for only such special damages as the plaintiff sustained by reason of their infraction of this public duty; and as the petition does not allege that he sustained any such special damages on account of the neglect of these officers to furnish suitable quarters, it makes no case for recovery against them of damages growing out of their failure to discharge this public duty.

9. A county is not subject at law to the process of garnishment of wages due to the warden of its chain-gang. *Born v. Williams*, 81 *Ga.* 796 (7 S. E. 868); *Leake v. Lacey*, 95 *Ga.* 747 (22 S. E. 655, 51 Am. St. R. 112); *Morgan v. Rust*, 100 *Ga.* 346 (28 S. E. 419). Equity follows the law, where a rule of law is applicable, and the analogy of the law where no rule is directly applicable. Civil Code (1910), § 4520; *Savannah Steam Rice Mill Co. v. Hull*, 103 *Ga.* 831 (30 S. E. 952). The same public policy which exempts a county from garnishment of wages due the warden of its county chain-gang exempts it and its county commissioners from an equitable suit the purpose of which is to enjoin the county commissioners from issuing a warrant to the warden for his wages, and in effect to enjoin the county from paying the same, and to subject the same to the payment of any judgment which the plaintiff might obtain against the warden in this case. It follows that the plaintiff did not make a case for injunctive relief.

10. Applying the foregoing rulings, the petition set forth no cause of

action against the county commissioners; and the judge did not err in sustaining the demurrer. *Judgment affirmed. All the Justices concur.*

No. 5582. APRIL 18, 1927.

Equitable petition. Before Judge Maddox. Floyd superior court. June 14, 1926.

McConnell brought his action for damages against Floyd County, its warden, and its county commissioners, and made these allegations: On October 15, 1925, upon his plea of guilty to a charge of misdemeanor, in the city court of said county, he was sentenced to serve in the chain-gang twelve months. His sentence provided that, after having served four months in the chain-gang, he could serve the remaining eight months of said sentence without the confines of the chain-gang, on probation. On said date he began to serve in said chain-gang for a term of four months, "under the official supervision of said county, and the personal control and direction of its warden." Said county has continuously maintained, at the expense of its taxpayers, an extensive plan of road construction under the chain-gang system. Petitioner, a man sixty-three years of age, not robust, but a victim of lumbago and the infirmity of age, was required to work from four o'clock in the morning until dusk in the evening, with an intermission at noon for a simple repast. The food served him was lacking in nutrition and was unwholesome. The noon diet was chiefly a ration of cornbread, sow-belly and cowpeas. Occasionally the peas were seasoned with weevils instead of sow-belly. When thus served they were indignantly rejected by the prisoners. The evening meal was supplied of the noon surplus. Breakfast was wheat bread made with water, heavy and unwholesome, two strips of sow-belly and udders, served with coffee without sugar, each prisoner dipping a tin cup in a can of coffee. No sanitary regulations were observed in cooking and serving this plain meal, not only unwholesome, but insufficient in nutritive value to meet the exactions of penal labor. Said warden receives and the county supplies food and raiment for the maintenance of his prisoners, at an average cost of over $1,000 monthly. The food supplies are selected by the warden. The dormitory, by reason of the lack of bathing facilities, overcrowding, and want of ventilation, was unhealthy, and a veritable pest-den of bedbugs, fleas, and flies. The toilet for male prisoners was unclean and a menace to the health

of the men. Housing conditions were crowded, filthy, and dangerous to life. Seventeen men often slept in a single cage, breathing the foulest odor. These unsanitary conditions existed, without any effort to improve the same, from October 15, 1925, until January 26, 1926, and so continued. Such conditions became so intolerable and deplorable that on November 23, 1925, a joint legislative committee visited said camp and inspected the same, and after so doing informed the county commissioners that, unless steps were taken immediately to remedy the unsanitary conditions of said camp, it would recommend the removal of all State prisoners to other counties. The county commissioners admitted these deplorable conditions, and stated that they meant to remedy the same as soon as possible. Petitioner was an inmate of said camp from October 15, 1925, until January 26, 1926. His term of four months, computed from October 7, 1925, diminished by four days monthly, an allowance for good time, expired January 19, 1926. The county warden had actual notice and knowledge of the expiration of said sentence. He was admonished three days before the expiration of the sentence to discharge the prisoner. This he refused to do, and wantonly and cruelly held him in chains thereafter for seven days at hard labor. Petitioner sues for $50 per day for said seven days of labor, for pain and suffering from sleeping in a grated steel cage, for lack of nutrition and illness in camp, for unfit prison fare, for sleeping with felons, for work side by side with the lowest type of humanity for seven days, for invasion and denial of legal rights, and for punitive damages. He lays his damages at $20,000. The warden is insolvent and unable to respond in damages. The county is not amenable to process of garnishment. Petitioner prays that the county be enjoined from paying to the warden his monthly salary, that the same be impounded into the treasury of said county, and for such other relief as is appropriate to his case.

The defendants demurred to the petition upon the grounds, (1) that it set forth no cause of action against the defendants, and (2) that under the law the defendants were not liable for any of the acts or facts therein alleged. The court overruled the demurrer as to the warden, and sustained the same as to the county and its commissioners. To this judgment the plaintiff excepted.

*Henry Walker,* for plaintiff. *Denny & Wright,* for defendants.

BECK, P. J., and ATKINSON and GILBERT, JJ., concurring specially. We concur in the result reached, but withhold such concurrence from the intimation in the seventh headnote that the facts of this case might, under the Civil Code (1910), § 4403, amount to a tort for which special damages might accrue. Also we withhold such concurrence from the intimation in the eighth headnote that the county commissioners might be held liable for special damages by reason of their "infraction" of their public duty. It seems wise to us to leave these questions open, to be decided in a proper case, unembarrassed by any intimation of the court in a case where, under the facts, the questions need not be decided.