A01A1364, A01A1365. STATE SOIL & WATER CONSERVATION COMMISSION et al. v. STRICKLETT et al.; and vice versa.

(555 SE2d 800)

ANDREWS, Presiding Judge.

These appeals arise from a complaint for equitable relief brought by the State Soil & Water Conservation Commission (the Commission) and the Broad River Soil & Water Conservation District (the District) alleging that Mark and Sharon Stricklett should be ordered to remove the residence they built on a location near a dam across the South Fork of the Broad River in Madison County. The Commission and the District claim the residence substantially interferes with a pre-existing easement granted to the District to operate and maintain the dam and impound floodwaters. The Strickletts counterclaimed seeking damages against the Commission and the District for intentional infliction of emotional distress, abusive litigation, and expenses of litigation. They also moved for recovery of attorney fees pursuant to OCGA § 9-15-14.

The trial court granted summary judgment in favor of the Strickletts on the claim for equitable relief on the basis that the residence does not substantially interfere with the easement and that the relief sought was barred by the principles of laches and equitable estoppel. The trial court also entered final judgment denying the Strickletts' counterclaims and their motion for attorney fees. In Case No. A01A1364, the Commission and the District appeal from the summary judgment order in favor of the Strickletts, and in Case No. A01A1365, the Strickletts appeal from the judgment against their counterclaims and motion for attorney fees. Because we find that factual issues and public policy considerations preclude the grant of summary judgment in favor of the Strickletts on the claim for equitable relief, we reverse the grant of summary judgment in Case No. A01A1364. In Case No. A01A1365, we vacate the denial of attorney fees sought pursuant to OCGA § 9-15-14 and reverse the trial court's judgment on the pleadings dismissing the Strickletts' claims for intentional infliction of emotional distress and expenses of litigation. We affirm the trial court's dismissal of the Strickletts' claim for abusive litigation as premature.

*Case No. A01A1364*

1. The Commission and the District contend that the trial court erred by concluding as a matter of law that the Strickletts' residence did not substantially interfere with the easement rights granted for the maintenance of the dam and floodwater impoundment.

The Commission and the District are state agencies organized according to the Soil and Water Conservation Districts Law (OCGA § 2-6-20 et seq.) for various goals including soil conservation, erosion

prevention, and flood control. The District (under the supervision of the Commission) is authorized to pursue these goals by the construction and maintenance of dams and other flood control structures. Pursuant to this authority, the District obtained an express written easement recorded in the Madison County real property records in 1961 over approximately 49 acres of land traversed by the South Fork of the Broad River, which allowed the District to construct a dam across the South Fork and impound waters on the land. The recorded easement document provided in part as follows:

[An easement is granted to the District for the purpose of] the construction, operation, maintenance and inspection of . . . [a] floodwater retarding structure [(a dam)] . . . located on the above described land; for the flowage of any waters in, over, upon, or through, such works of improvement; and for the permanent storage and temporary detention, either or both, of any waters that are impounded, stored or detained by such works of improvement. . . . The location on the ground of the easement herein granted . . . is as follows: A floodwater retarding structure with a sediment pool up to 700.0 feet elevation, mean sea level, and floodwater flowage up to 725.0 feet elevation, mean sea level, as shown on Map No. 1 for South River Watershed in Madison County, Georgia on file in [the Madison County real property records], which description by reference is incorporated herein. This easement includes the right of ingress and egress at any time over and upon the first above described land of the Grantor. There is reserved to the Grantor, his heirs and assigns, the right and privilege to use the first above described land of the Grantor at any time, in any manner and for any purpose not inconsistent with the full use and enjoyment by the Grantee, its successors and assigns, of the rights and privileges herein granted.

Pursuant to these easement rights, the District constructed a 44-foot high earthen dam across the South Fork which created a normal impounded water pool with a surface area of approximately 12 acres and a storage volume of 80 acre-feet. The dam has the capacity to greatly increase the normal pool size by impounding floodwater levels in the pool up to a surface area of approximately 40 acres and a storage volume of 589 acre-feet. The District's recorded floodwater easement was described as extending on the ground to an elevation of 725 feet above mean sea level. The easement also refers to and incorporates a map describing the floodwater easement and stating that the map is recorded in the Madison County real property records (without stating where). The map, which was recorded but

not in the chain of title to the land burdened by the easement, was eventually located after the present suit was filed, but it provided no additional description for the location of the floodwater easement.

On June 21, 1995, the Strickletts purchased a 5.78-acre tract of land which included part of the land on which the dam was constructed and which was burdened by the recorded easement. On October 24, 1995, the Strickletts commenced construction of a residence on the land upstream of the dam, near the toe of the dam, above the normal level of the impounded water. The residence was completed on February 1, 1996. The Commission and the District produced evidence that the house, as constructed, altered portions of the earthen dam and the dam's emergency spillway and posed serious erosion problems for the spillway. Although the house was built well above the normal impounded water level, evidence showed that the foundation and floor of the house were a few feet below the maximum floodwater elevation provided in the recorded easement and that the house was subject to being flooded by impounded waters at the maximum elevation of the floodwater easement during projected maximum rainfalls. There was also evidence that, because of the recent location of residences in the floodplain downstream of the dam, the dam would have to be reclassified as a Category I dam (improper operation or dam failure would result in probable loss of human life) under the Georgia Safe Dams Act (OCGA § 12-5-370 et seq.). Other evidence showed that, although the Strickletts' residence did not substantially change how the dam presently operated, it did limit available options for improvements to the spillway which the dam may need for compliance with the Safe Dams Act.

In support of their motion for summary judgment, the Strickletts produced evidence that the construction of the residence did not alter the dam or spillway. They showed that the manner in which the dam and spillway were constructed made it impossible for floodwaters to reach the elevation of the residence. They also produced evidence showing that, even considering floodwater evidence produced by the Commission and the District that the residence could be flooded, the possibility that floodwaters would ever reach the maximum elevation of the floodwater easement and flood the residence was extremely remote. The Strickletts offered to formally assume liability for any damages caused to them by flooding. Accordingly, the Strickletts contended that the residence did not substantially interfere with the easement rights.

The easement given to the District in 1961 sets forth the intent of the parties that it grant nonexclusive rights over the land to construct, operate, inspect, and maintain a dam capable of impounding a pool of water up to a stated floodwater elevation. The easement expressly reserved in the grantor and successors in title, including the Strickletts, the right to use the land in any manner not inconsis-

tent with the District's full use and enjoyment of its easement rights. This accords with the principle that "unless the easement is exclusive, the grantor may construct buildings or other improvements on the land which do not 'substantially interfere' with the enjoyment of an easement previously granted." *Upson v. Stafford*, 205 Ga. App. 615, 616 (422 SE2d 882) (1992); *Yeomans v. Head*, 243 Ga. 266 (253 SE2d 746) (1979) (owner of land burdened by a nonexclusive easement retains a concurrent right of use and possession, except so far as a limitation thereon is essential to the reasonable enjoyment of the easement).

We agree with the trial court's determination, as a matter of law, that the minor encroachment by the residence a few feet below the maximum elevation of the floodwater easement does not substantially interfere with the District's enjoyment of the easement. The only argument made by the Commission and the District on this issue is that they might potentially be liable for damages caused to the Strickletts by floodwaters reaching the maximum floodwater elevation of the easement, however remote this possibility might be. As noted above, the Strickletts have offered to expressly assume liability for all such damages. Moreover, given the extensive evidence produced in this litigation regarding the risk of flooding, it would be difficult to conceive how the Strickletts could claim ignorance and avoid being barred from seeking any floodwater damages by assumption of the risk. See *Vaughn v. Pleasant*, 266 Ga. 862, 864 (471 SE2d 866) (1996). In any event, no evidence was produced showing how the encroachment on the floodwater easement substantially interfered with the District's rights.

We disagree, however, with the trial court's determination that there was no other evidence of substantial interference with the District's easement rights. Evidence that the residence, as constructed, altered the dam and spillway, created serious erosion problems, and limited available options that may be necessary to bring the dam into compliance with the Safe Dams Act was sufficient to create a factual question on the issue of whether the residence substantially interfered with the District's easement right to operate and maintain the dam. A necessary incident to enjoyment of the easement to operate and maintain the dam is the right and duty to insure that the dam is safe and that it complies with the requirements of the Safe Dams Act. See *Folk v. Meyerhardt Lodge &c.*, 218 Ga. 248, 249 (127 SE2d 298) (1962); OCGA § 12-5-370 et seq. If the trier of fact finds substantial interference with this easement right, a further factual issue would be presented as to whether the interference can be remedied only by removal of the residence, as sought by the Commission and the District, or by some other means.

2. The Commission and the District also contend that the trial court erred by granting summary judgment in favor of the Strickletts

on the basis of laches and equitable estoppel.

In support of their contention that laches and equitable estoppel barred the relief sought, the Strickletts produced evidence that the Commission and the District were aware while the residence was being constructed that it was adjacent to the dam, yet they waited until after construction was completed before objecting that the residence interfered with easement rights and demanded its removal. The Strickletts admitted they were aware that the land they purchased was burdened by an easement for maintenance of the dam, although they claimed to be unaware of the recorded easement document. Nevertheless, the Strickletts stated by affidavit that, because they were unsure if the dam easement would restrict their right to construct a residence on the land, prior to starting construction, they asked agents of the District in an office in Danielsville if there were any building restrictions on the land. According to the Strickletts, the District's agents stated that there were no restrictions and referred them to the Madison County Planning & Zoning Board. In response to these sworn contentions by the Strickletts, the Commission and the District responded that they have no information that the Strickletts spoke to anyone in their office and have not identified anyone spoken to. They further responded that, although they had no office in Danielsville, the National Resource & Conservation Service (NRCS) does operate an office in Danielsville. The Commission and the District conceded that the NRCS is a federal agency that provides substantial funding to the Commission and that they are required by federal regulations to cooperate with the NRCS on dam safety and maintenance, including inspections for encroachments on dam rights-of-way.

Evidence showed that the Strickletts commenced construction of the residence on October 24, 1995, and finished construction on February 1, 1996. The Commission and the District admitted that NRCS employees, acting as their agents, visited the construction site for the purpose of inspecting the dam on or about November 28, 1995, at a time when the construction on the residence had progressed to the point that grading was completed, the foundation was in, and subflooring was in place. It is clear that the alleged interference with the easement for operating and maintaining the dam caused by alterations to the dam and spillway, if any, was visible at that time about one month into the construction process. In fact, the Commission and the District admit that this inspection first revealed the claimed interference which gave rise to this litigation. Nevertheless, it is undisputed that neither the Commission nor the District (nor anyone else) took any action to inform the Strickletts that the residence, as it was being constructed, interfered with easement rights until February 7, 1996, after the construction had been completed. In fact, the Strickletts contend that the NRCS employees told them at the time

of the inspection on November 28 that everything looked fine. On February 7, 1996, the Strickletts received a phone call from the District telling them for the first time that the residence might be located within the District's floodwater easement, and on March 8, 1996, the Strickletts received a letter from the District informing them for the first time that their residence encroached on the floodwater easement and interfered with the emergency spillway and the operation of the dam and that the residence must be removed.

On the other hand, there is evidence that the Strickletts, with knowledge of the District's easement rights, commenced construction of the residence in a manner which altered the earthen dam and its spillway without first contacting the District to determine if the construction interfered with the easement. The dam was clearly visible on the land purchased by the Strickletts, and they were aware of an easement for maintenance of the dam. The recorded easement document in their chain of title provided notice to them of the express terms of the easement granted to the District to operate and maintain the dam, which provided that they could not use the land in a manner inconsistent with the District's full use and enjoyment of the dam easement. The Strickletts contended that they contacted the District's "agents" at an office in Danielsville to ask about building restrictions related to the easement before starting construction. However, the District denied having an office in Danielsville, pointing out that the NRCS maintained an office in Danielsville. Although the Strickletts do not say so directly, it may be inferred that the "agents" they spoke to were not District employees but employees of the NRCS in Danielsville, who told them there were no restrictions. Although the Commission and the District admitted that NRCS employees acted as their agents during the subsequent inspection of the dam, there is no evidence establishing that the NRCS employees acted as agents for the Commission or the District in making decisions about enforcement of the District's easement rights.

Even assuming that the foregoing facts could establish the elements necessary for application of the principles of equitable estoppel or laches, we conclude that strong public policy considerations make these equitable doctrines unavailable to preclude the Commission or the District, as state agencies, from seeking to enforce easement rights necessary for the safe operation and maintenance of the dam. In general, equitable defenses are unavailable against the state where their application would thwart a strong public policy. See *McConnell v. Floyd County*, 164 Ga. 177, 178 (137 SE 919) (1927) (equitable relief will not be granted in contravention of public policy); *Rehak v. Mathis*, 239 Ga. 541 (238 SE2d 81) (1977) (equity will not aid enforcement of contract against public policy). "Equity, like other divisions of jurisprudence, takes notice of public policy, promotes it and conforms to it." *Green v. Coast Line R. Co.*, 97 Ga. 15, 32-33 (24

SE 814) (1895). In this case, there is a strong public interest in addressing claims by the Commission and the District that the Strickletts' residence has substantially interfered with easement rights necessary for the safe operation and maintenance of the dam. This interest outweighs the claim by the Strickletts that the action should be barred by equitable estoppel or laches. See Applicability of Doctrine of Estoppel Against Government and Its Governmental Agencies, 1 ALR2d 338; Modern Status of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies, 27 ALR Fed. 702.

Accordingly, the trial court erred by granting summary judgment in favor of the Strickletts.

## Case No. A01A1365

3. The Strickletts contend the trial court erred by denying their motion for attorney fees pursuant to OCGA § 9-15-14 (b). In Case No. A01A1364, we reversed the grant of summary judgment in favor of the Strickletts and held that a jury must consider evidence of whether there was substantial interference with the asserted easement rights. Accordingly, we vacate the trial court's denial of the Strickletts' motion pursuant to OCGA § 9-15-14 (b) and direct the trial court to reconsider this motion in light of all the evidence produced at trial. See *Porter v. Felker*, 261 Ga. 421, 422 (405 SE2d 31) (1991).

4. The Strickletts also contend the trial court erred by dismissing their counterclaims for intentional infliction of emotional distress, for recovery of expenses of litigation, and for abusive litigation.

(a) As to the claim for intentional infliction of emotional distress, it is undisputed that, after a hearing, the trial court dismissed this claim on the pleadings on the basis that it failed to state a claim. The Strickletts contend that the pleadings were sufficient to support the claimed relief.

> The question here is whether the undisputed facts appearing from the pleadings show [the Commission and the District were] entitled to judgment as a matter of law. . . . A complaint is not required to set forth a cause of action, but need only set forth a claim for relief. . . . If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient. Where the party moving for judgment on the pleadings does not introduce affidavits, depositions, or interrogatories in support of his motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. . . . The

motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim.

(Citations and punctuation omitted.) *Sulejman v. Marinello*, 217 Ga. App. 319, 320 (457 SE2d 251) (1995).

To recover for intentional infliction of emotional distress, the Strickletts were required to prove the following elements: (1) intentional or reckless conduct, (2) which is extreme and outrageous, (3) and caused the emotional distress, (4) which is severe. *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (469 SE2d 776) (1996). Concluding that "[t]he only allegations in the counterclaim which arguably allege the tort of intentional infliction of emotional distress relate to [the] filing and pursuit of the lawsuit [for equitable relief]," the trial court found that these allegations were not a sufficient basis to support the tort claim. We agree that, if the counterclaim for intentional infliction of emotional distress was based solely on the allegation that the underlying suit was frivolous, this would not be sufficient. *Nottingham Co. v. Resource Materials Corp.*, 210 Ga. App. 128, 129 (435 SE2d 447) (1993); *Nairon v. Land*, 242 Ga. App. 259, 261 (529 SE2d 390) (2000). However, that is not all the Strickletts alleged in their counterclaim. In addition, the counterclaim alleged that the Commission and the District knew the residence was being constructed adjacent to the dam and that they inspected the dam and the construction site early in the construction process at a time when all of the alleged interference was readily apparent; that the inspectors told the Strickletts everything looked fine; that the Strickletts finished construction of the residence during the next two months following the inspection with no objection; and that the Commission and the District waited until after the construction was completely finished before claiming the residence interfered with the dam and demanding that it be removed. The Strickletts further alleged the Commission and the District demanded removal of the residence despite the existence of lesser remedies and despite the fact that they had taken no action against similar residences which encroached on easements at other dams. Finally, the Strickletts contended that the Commission and the District singled them out for this belated demand because the Strickletts were supported by a political rival of a Commission member. We find that evidence in support of these allegations could be construed by a jury as reckless conduct of an extreme and outrageous nature which caused the Strickletts severe emotional distress. Accordingly, we reverse the dismissal of the Strickletts' claim for intentional infliction of emotional distress.

(b) The trial court also dismissed the Strickletts' counterclaim under OCGA § 13-6-11 for litigation expenses on the basis that it

could not stand apart from the dismissed counterclaim for intentional infliction of emotional distress. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (417 SE2d 383) (1992). Since dismissal of the intentional infliction of emotional distress claim has been reversed, the dismissal of the claim based on OCGA § 13-6-11 is also reversed.

(c) Finally, the trial court dismissed the Strickletts' counterclaim for abusive litigation pursuant to OCGA § 51-7-80. As the Strickletts essentially concede on appeal, this counterclaim was properly dismissed by the trial court as prematurely brought before the final termination of the proceedings.. *Jacobs v. Littleton*, 241 Ga. App. 403, 404 (525 SE2d 433) (1999).

*Judgment reversed in Case No. A01A1364. Judgment affirmed in part, reversed in part and vacated in part with direction in Case No. A01A1365. Eldridge and Miller, JJ., concur.*

DECIDED OCTOBER 23, 2001 —
RECONSIDERATION DENIED NOVEMBER 15, 2001.

*Thurbert E. Baker, Attorney General, Denise Whiting-Pack, Assistant Attorney General, Fortson, Bentley & Griffin, J. Edward Allen, Jr., Augustus T. Curtis*, for appellants.

*Kerry S. Doolittle*, for appellees.

*Holland & Knight, Mary Ann B. Oakley*, amicus curiae.