## A10A2184. RICHARDSON v. GEORGIA POWER COMPANY.
### (708 SE2d 10)

BARNES, Presiding Judge.

Richard Richardson began building a garage on a section of his property encumbered by an easement owned by Georgia Power. The company sued Richardson, seeking injunctive relief from the encroachment and attorney fees for bad faith and stubborn litigiousness. Following discovery, both parties moved for summary judgment, and the trial court granted it to Georgia Power as to the encroachment issue. Richardson appeals, contending the trial court erred in holding that Richardson's garage was not permitted by the easement. For the reasons that follow, we affirm.

In 1955, Georgia Power acquired by condemnation a 100-foot-wide utility easement, which encumbers a portion of Richardson's property. The easement, which was recorded, gives the company "the continuous right from time to time to go in and . . . construct, erect, install, operate, maintain, inspect, reconstruct, repair, rebuild, renew and replace" towers, frames, and poles, among other things. It also gives the company the right "to clear, keep clear and to remove . . . all undergrowth, trees and other obstructions, objects and structures" from the easement. Finally, the easement provides:

> [T]he land between the towers, frames and poles may be used by the owners of said land . . . for agricultural or roadway or other purposes, provided such use is not inconsistent with the rights sought to be condemned and . . . does not interfere with . . . [the] towers, frames, poles, wires, lines, and the construction, erection, installation, operation, maintenance, inspection, reconstruction, repairing, renewal, replacement and the rebuilding [of the structures].

A 115,000-volt transmission line runs through the easement.

Richardson bought the property in 2006, and his warranty deed notes that the property is subject to "general utility easements of record." He obtained a building permit and began building a garage on that portion of his property subject to the easement, but before he finished, a right-of-way specialist with Georgia Power asked him to remove the structure because it encroached on the easement. Richardson declined to do so, contending that the structure does not interfere with Georgia Power's use, and this suit followed.

The evidence presented to the trial court includes Richardson's deposition and affidavit, three affidavits from Georgia Power employees, and an affidavit from the company's attorney regarding fees. In his affidavit, Richardson avers that there are "no wires, guy wires, anchors, braces, supports, towers, frames or poles" on that part of

the easement within his property, and that his structure does not interfere with the operation of or access to the power line.

A right-of-way supervisor for Georgia Power averred that unimpeded access to the 115,000-volt power line running through this easement was "critical to providing safe and reliable electricity." A permanent structure such as the one on Richardson's property "directly and adversely interferes with [the company's] ability and rights to access that area to carry out operation and maintenance duties, and specifically eliminates our ability and rights under the easement to construct, erect or install the towers, frames, and poles necessary" to transmit electricity, according to the supervisor. Specifically, he continues, the structure eliminates the company's ability to construct any additional towers, frames, and poles that may become necessary in the future, and interferes with its ability to access that area for overhead or underground wires.

Additionally, in her affidavit, a right-of-way specialist noted that the garage was 70 feet from one utility pole and 25 feet from another, and the company kept the easement free of trees and obstructions for "maintenance and safety," including, for example, three specific reasons: (1) If the company relocated the poles, the garage may interfere with the relocation of the grounding system; (2) when performing line maintenance, the conductor often must be lowered to the ground and the garage's location directly under one of the "outside phases" of the line would compromise safety; and (3) depending on the equipment used, someone working on the garage roof could violate the Georgia High-voltage Safety Act.

In its 12-page order, the trial court exhaustively reviewed the facts and concluded that the evidence established that Richardson committed a trespass and violated the easement by building a permanent structure on it. The easement itself was unambiguous, and the 20' x 20' permanent building substantially interfered with Georgia Power's use under the express terms of the easement. Richardson knew or should have known about the easement, which was recorded, and his building permit specified that "to avoid encumbrances" of the property he should contact a lawyer or buy a consumer guide. The trial court issued an injunction ordering Richardson to remove his structure from the easement. The court denied summary judgment, however, on Georgia Power's motion for attorney fees under OCGA § 13-6-11, finding that genuine issues of material fact existed as to whether Richardson was stubbornly litigious, and if so, what amount of fees should be awarded.

1. Richardson argues that this easement was not a "contract" but was granted under a condemnation proceeding, and expresses uncertainty regarding the trial court's statement that "the terms of the contract clearly state the rights of each party," asserting that the

trial court's discussion of contractual construction is irrelevant. Richardson misunderstands the nature of both the condemnation and the resulting easement. The condemnation was simply a method by which the utility established its need for and cost of the easement it sought. Once the property was "condemned," the company paid the landowners the value of the easement, which was reduced to writing and filed with the deeds, covenants, plats, and other documents related to real estate ownership. That written easement constitutes a contract, and express easements are construed by applying the rules of contract construction. *Municipal Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005). "Generally, this [easement] presents a question of law for the court, unless the language presents an ambiguity that cannot be resolved by the rules of construction." Id. In construing a contract, if the terms are clear and unambiguous, the court looks to the contract alone — the easement itself — to determine the parties' intent. *Parris Properties v. Nichols*, 305 Ga. App. 734, 738 (1) (a) (700 SE2d 848) (2010).

2. Richardson also asserts that the trial court erred in finding that he "trespassed" by constructing the building on his own property, because an owner cannot trespass on his own property. He argues that he violated no statute or ordinance that would constitute a "trespass." As used in this context, however, a "trespass" upon an easement means use of the property in violation of the easement terms. See, e.g., *Sams v. Young*, 217 Ga. 685, 687 (124 SE2d 386) (1962) ("any unlawful interference with a property right is a trespass") (citation and punctuation omitted); *Ga. Power Co. v. Green*, 207 Ga. 250 (61 SE2d 146) (1950) (utility contended that house erected beneath its transmission line constituted a "trespass upon the easement"). Richardson is correct that he owns the property and has a right to enter it and enjoy it, to the extent that his use does not violate the terms of the easement.

3. Richardson next contends that the trial court erred in concluding that his garage materially or substantially interfered with Georgia Power's easement. Any restrictions on an owner's use of land must be clearly established and strictly construed in the owner's favor. *Glisson v. IRHA of Loganville*, 289 Ga. App. 311, 313 (1) (656 SE2d 924) (2008) (subdivision's restrictive covenants clearly prohibited building a shed in materials different from those used to build the house). As noted by the amicus brief submitted by the Georgia Transmission Corporation, however, the easement does not prohibit the landowner from "substantially" interfering with the utility's specified uses, but rather prohibits any use that "interferes" with the operation and maintenance of the power line. Thus, the trial court need not have found that Richardson's garage "substan-

tially" interfered with Georgia Power's easement rights, only that it interfered with those rights at all.

Richardson also argues that the trial court incorrectly found that *any* encroachment onto the easement was an impermissible interference. The trial court did not find that "any" encroachment was an impermissible interference, however; it found that a 20-by-20-foot structure located between two utility poles was an interference.

4. Finally, Richardson argues that the trial court erred in determining that the garage interfered with the utility's easement. Pretermitting whether Georgia Power presented sufficient evidence to establish that the garage actually interfered with the operation and maintenance of the transmission line,[1] Richardson's right to enjoy his property is limited by the specific rights granted to Georgia Power in its easement. The easement expressly permits the company to keep the right-of-way clear of "obstructions, objects and structures." Applying this unambiguous term to the facts before us, Georgia Power's easement gives it the right to remove the garage from its right-of-way. Accordingly, the trial court did not err in granting Georgia Power's motion for summary judgment on the issue of trespass and in issuing an injunction ordering the removal of Richardson's garage.

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED FEBRUARY 17, 2011 —
RECONSIDERATION DENIED MARCH 10, 2011 —

*Brace W. Luquire*, for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Jorge Vega, Balch & Bingham, Natalie M. Beasman*, for appellee.
*Fred D. Bentley, Jr.*, amicus curiae.

---

[1] Georgia Power argues that the garage compromises its ability to maintain the lines, because, for example, if it had to lower the line to the ground for maintenance, the garage would be too close according to applicable safety rules.