## A04A1886. HUCKABY v. CHEATHAM.
### (612 SE2d 810)

ADAMS, Judge.

Two property owners who share a driveway easement ended up in court regarding whether one of them could park on the common driveway. The primary issue on appeal is whether the trial court should have granted a directed verdict by ruling as a matter of law that parking on the easement was not allowed.

The evidence presented at trial shows that Angela Huckaby and Vance Cheatham live on adjoining properties in single-family homes that they own. Huckaby co-owns her house with Claire Moynihan; Cheatham co-owns his house with his wife. The parties share a common driveway, and, on August 27 and 28, 1991, the prior owners entered into and recorded a document entitled "Reciprocal Driveway Easement Agreement" (the "Easement"), which expressly provides that it shall constitute a covenant running with the title to both properties.

A recital in the Easement describes the driveway:

There currently exists an unpaved gravel driveway approximately 8 feet in width which is located partially upon the [Huckaby] Property, and partially upon the [Cheatham]

---

[47] See *City of Gainesville*, supra at 559-560; *Nichols*, supra; *City of Warner Robins*, supra.

property (the "Driveway"), which is shown on the survey for Vance Cheatham . . . dated July 22, 1991, a copy of which is attached hereto as Exhibit A.

In separate provisions for each party, the Easement provides that each party shall have an easement for the portion of the driveway on the other person's property:

> [Each party hereby grants to the other party] a perpetual, nonexclusive easement over that portion of the Driveway located upon [his or her] Property, for pedestrian and vehicular access between North Candler Street and the residence located upon the [other] Property.

But each party was allowed to use the portion of the easement on his own property "for any purposes which do not unreasonably interfere with the use and enjoyment of this easement by [the other party]."

After the parties had been neighbors for several years, a dispute developed arising out of complaints about barking dogs and assertions of trespass. Consequently, on January 18, 2000, Huckaby and Cheatham (and their co-owners) entered into a personal agreement (the "2000 Agreement"). As stated in the recitals:

> Whereas, claims have been asserted by the Cheathams as to the purported trespass and throwing of projectiles in the vicinity of the dogs by Huckaby and Moynihan; and

> Whereas, claims have been asserted by Moynihan and Huckaby against the Cheathams relating to purported violations of the City of Decatur Code as it relates to dogs barking, failure to restrain dogs, and a purported incident of attack of a dog owned by the Cheathams upon Angela Huckaby. . . .

The 2000 Agreement was intended "to resolve such disputes . . . and to provide methods of addressing ongoing concerns held by all Parties," and the parties expressly agree that it is a personal agreement that does not run with the land. In the document, the parties first acknowledge that the Cheathams intend to build a privacy fence along the property line (not in the easement area), and Moynihan agreed to pay a portion of the construction cost. There are also several provisions regarding the Cheathams' dogs and several other provisions irrelevant to this case.

Finally, in paragraph 9, the parties agree to additional provisions regarding the driveway:

The Parties further acknowledge that there is, as a matter of record, an easement over the portion of the driveway that runs parallel to the shared boundary line. The Parties do hereby further consent to refrain from interfering with each party's use of the driveway area for ingress and egress, and that each shall not block the driveway, or exercise exclusive dominion over any portion of the easement area.

But they also make clear that they did not intend to modify the existing Easement: "Nothing contained herein is intended to modify the rights and or privileges created by the express terms of said easement."

Only three weeks later, when Cheatham began to build the privacy fence, he cut down or trimmed several cherry laurel trees, despite being informed by Moynihan that the trees were not on his property. Huckaby filed suit alleging conversion and trespass regarding the laurel trees, and, eight months later, she amended her complaint to allege that Cheatham had wilfully violated the Easement and to request injunctive relief. She requested that the court "enjoin the Defendant from violating the express terms of the Easement by such conduct, including the parking of vehicles on the easement area."

Five months later, Cheatham filed, in the same civil action, a request for a temporary restraining order. He alleged that Huckaby had placed a two-inch steel pipe down the center of the drive, running the length of the drive, secured by two-foot rebar stakes that were driven into the ground every four feet or so. The pipe was then covered with gravel, which created a mound between three and eight inches high. Cheatham alleged that the pipe violated paragraph 9 of the 2000 Agreement. The court granted a temporary restraining order and ordered the removal of the pipe but also temporarily enjoined Cheatham "from parking and/or permitting others to park in the driveway area unless such vehicle is left running and attended."

The case went to trial, and at the close of the evidence, Huckaby moved for a directed verdict, requesting that the court hold that the Cheathams may not park in the area that is depicted as the driveway in the survey attached to the Easement. The judge asked Cheatham's attorney if Cheatham was "asking to be able to park in the driveway." Cheatham's attorney replied, "yes." Cheatham argued that the documents did not forbid parking, rather they only forbid "blocking" or "unreasonably interfering" with the use of the driveway, and a car could get around another car parked partially in the easement area as illustrated by six photographs that had been introduced by the parties into evidence. He later suggested that there would be no

blocking or interference if Huckaby could get by Cheatham's car by driving slightly off the easement area and into her own yard.

Huckaby asserted that she was not limited to complaining about the cars as shown in the photographs because there was testimony that the Cheathams parked "in and about that driveway area." And Huckaby stressed that the Easement does not contemplate *any* parking on the common driveway, and she again requested that the court determine the issue as a matter of law. The judge explained that she was going to ask the jury if the Cheathams could park on their own property, but partially in the easement, without "blocking" the easement as prohibited by the 2000 Agreement, or whether the Cheathams would have to go past where the driveway forks into each party's yard.

The judge ultimately decided to give the jury only one special interrogatory on the issues regarding the driveway: whether Cheatham's parking as shown in the six photographs constituted a violation of paragraph 9 of the 2000 Agreement; the Easement was not mentioned. The judge apparently based her ruling on a conclusion that the word "block" as used in the 2000 Agreement was ambiguous and needed to be construed by the jury. Huckaby objected to the interrogatory on the grounds that "the construction of the easement agreement and subsequent agreement is a matter for the Court and not the jury."

The jury found in favor of defendant Cheatham on all issues, including the easement interrogatory. The judge entered a judgment on the verdict that provides, among other things, that parking vehicles as shown in the six photographs does not constitute a violation of the Easement or the 2000 Agreement. Huckaby filed motions for new trial and for judgment notwithstanding the verdict, both of which the court denied.

1. Huckaby first asserts that the trial court erred by not granting her motion for directed verdict or judgment notwithstanding the verdict. "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28, 28-29 (550 SE2d 450) (2001). Huckaby would be entitled to a directed verdict if the relevant issues can be resolved as a matter of law, or if the facts are undisputed with regard to any jury issues raised.

Construction of the Easement and the 2000 Agreement are questions for the court. *SunTrust Bank v. Fletcher*, 248 Ga. App. 729, 732 (548 SE2d 630) (2001). When reviewing a trial court's determination of legal issues, "we consider such questions de novo and owe no deference to a trial court's legal analysis. [Cits.]" *Pichulik v. Ball*, 270 Ga. App. 656, 660 (1) (607 SE2d 247) (2004). The normal rules of

contract construction apply, and "[a]bsent ambiguity that cannot be resolved by applying the rules of contract construction, the contract remains a question of law." Id.

Under the Easement, although Cheatham granted Huckaby the right to use the portion of the driveway located on his property for the purpose of pedestrian and vehicular access to her property, Cheatham retained the right to use the same area "for any purposes which do not unreasonably interfere with the use and enjoyment of this easement" by Huckaby. This is consistent with the law of easements in Georgia:

> Notwithstanding [the grant of an easement], there remains in the grantor the right of full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted.

(Citation and punctuation omitted.) *Folk v. Meyerhardt Lodge No. 314 F. & A. M.*, 218 Ga. 248, 249 (127 SE2d 298) (1962). Accordingly, it has been held that the grantor retains the right to construct buildings or other improvements on the land that do not "substantially interfere" with the enjoyment of an easement previously granted. See *Tippins v. Howard*, 189 Ga. 193, 195 (1) (5 SE2d 750) (1939); *Kiser v. Warner Robins &c. Estates*, 237 Ga. 385, 387 (3) (228 SE2d 795) (1976). See, e.g., *State Soil &c. Comm. v. Stricklett*, 252 Ga. App. 430, 432-433 (555 SE2d 800) (2001) (grantor of easement for construction, operation, and maintenance of a dam retained the right to use the land so long as the use did not "substantially interfere" with enjoyment of the easement).

Nevertheless, when addressing the express grant of easements of ingress and egress, Georgia case law provides, where there is no indication to the contrary, that "reasonable enjoyment of the easement" means "*full enjoyment* of the [ingress and egress] easement[ ]." (Emphasis supplied.) *Montana v. Blount*, 232 Ga. App. 782, 784-786 (1) (a) (504 SE2d 447) (1998). In *Montana*, this Court held that an express grant of an easement for ingress and egress over streets or rights-of-way (by recorded plat and deeds for the benefit of subdivision lot owners) gave the grantees the right to *full use* of the right-of-way or street, not limited by a showing of necessity. Id. at 784-785. Put another way, "[a]s a matter of law, neither a dominant tenement nor a servient tenement can interfere with each other's rights to use a nonexclusive easement for ingress and egress. [Cit.]" *Harvey v. Lindsey*, 251 Ga. App. 387, 391 (1) (554 SE2d 523) (2001). See also *Smith v. Bentley*, 70 Ga. App. 13 (27 SE2d 252) (1943) (express grant of easement to use alley for ingress and egress gives the easement holder the right to remove obstructions "although he suffers no damage or inconvenience therefrom"). Compare *Upson v. Stafford*,

205 Ga. App. 615, 616-617 (422 SE2d 882) (1992) (minor encroach-ment into easement area that did not encroach upon ingress/egress portion of easement could not be said to have materially or substan-tially interfered with the easement holder's use of the easement).

Although the court in *Upson* determined that a minor encroach-ment on an 80-foot-wide easement did not "materially interfere" with the large multipurpose easement, it specifically distinguished non-exclusive ingress/egress easements, for which Georgia law provides that "the argument that the complainant is not being damaged or inconvenienced, as where he or she is using an alternate route as a means of access to his or her property, is no defense." *Upson*, 205 Ga. App. at 617.

Accordingly, as a matter of law, Cheatham was not allowed to interfere with Huckaby's ingress and egress over the easement regardless of whether she was being inconvenienced, had an alter-nate route, or even did not actually use the easement. See *Smith*, 70 Ga. App. at 15. The word "interfere" is defined as "[t]o check; hamper; hinder; infringe; encroach; trespass; disturb; intervene; intermeddle; interpose." Black's Law Dictionary (5th ed. 1979), p. 730. As a matter of law, parking on the easement would hinder or infringe on Hucka-by's ability to use the easement for ingress and egress.

Cheatham suggests that the location of the easement on his property is somewhat uncertain because neither he nor Huckaby were parties to the original Easement. But, the Easement incorpo-rates by reference a survey prepared for Cheatham that shows the location of the easement on the two properties, and Cheatham admitted at trial that he did not dispute the accuracy of the survey. The survey legend states, "This map or plat has been calculated for closure and is found to be accurate within 1 foot in 71544 feet," the scale of the survey is shown on its face, and the survey designates the direction north. This information is sufficient to determine the exact dimensions and location of the easement. *David v. Crane*, 240 Ga. 671, 672 (242 SE2d 131) (1978); *Chicago Title Ins. Co. v. Investguard*, 215 Ga. App. 121, 123-124 (449 SE2d 681) (1994).[1]

Accordingly, the Easement is not ambiguous, and the trial court erred by failing to direct a verdict in favor of Huckaby on the issue of whether Cheatham could park in the easement area.

The 2000 Agreement, by its express terms, did not alter the terms of the Easement. Rather, it was a personal agreement between the

---

[1] One provision of the Easement, pertaining to Huckaby's property only, limits the size of the easement on Huckaby's property to a five-foot-wide strip that is seventy feet long:

Such easement shall extend onto the [Huckaby] Property no further than five (5) feet . . . from the boundary line . . . and shall extend onto the [Huckaby] Property no further than seventy (70) feet [from the street].

parties that, if anything, further restricted the parties' use of the portion of the driveway located on their own properties. According to the 2000 Agreement, each party "consent[ed] to refrain from interfering with each party's use of the driveway area for ingress and egress" and further agreed not to "block the driveway, or exercise exclusive dominion over any portion of the easement area." The 2000 Agreement does not include the modifier "unreasonably" from the prohibition on interfering, suggesting that *any* interference is prohibited. And, although Cheatham relies on a definition of the word "block" to mean totally obstruct, at least one dictionary defines the word as "[t]o stop or impede the passage of or movement through; hinder or obstruct." American Heritage Dictionary (2nd College ed. 1985), p. 188. And, it defines "hinder" as "[t]o get in the way of; hamper. . . . To obstruct or delay the progress of." Id. at p. 613. Furthermore, the 2000 Agreement prohibits Cheatham from "interfering" with Huckaby's ingress and egress, a concept we have already construed to prohibit parking.

The judgment is reversed with regard to the easement, and the case is remanded for entry of a judgment consistent with this opinion.

2. Huckaby sought actual and punitive damages and attorney fees on her claim of trespass and conversion against Cheatham for cutting down the cherry laurel trees, but the jury ruled in favor of Cheatham. In this connection, Huckaby asserts on appeal that the trial court erred by allowing Cheatham to show a certain videotape and to cross-examine Huckaby on the contents of the video. "[A]dmission of evidence lies in the sound discretion of the trial court, and we will not reverse in the absence of a showing of abuse of discretion." (Citation and punctuation omitted.) *Royals v. Ga. Peace Officer Standards & Training Council*, 222 Ga. App. 400, 404 (474 SE2d 220) (1996).

Huckaby demanded punitive damages and attorney fees based upon the fact that Cheatham did not immediately stop cutting the trees when asked to do so by Moynihan given that Moynihan presented Cheatham with his own survey in an attempt to show him that the trees were not in his yard. Huckaby moved in limine to prohibit evidence of all prior dealings and bad behavior between the parties that occurred prior to the trespass, on the grounds that it was not relevant to any issue in the case. Cheatham's attorney argued in response that one of the reasons Cheatham did not stop cutting the trees was based on the prior dealings between the parties. The court denied the motion in limine, and that decision has not been raised on appeal.

After the court denied the motion, the jury was immediately made aware of the evidence during Cheatham's opening statement. And, in an attempt to soften the impact of the disputed information,

Huckaby, on direct examination, testified to the prior disputes between the parties, including information about barking dogs, slingshots, and incidents where either she or Moynihan threw or shot things at or near Cheatham's dogs.

When Cheatham's attorney cross-examined Huckaby, he tendered a videotape that he represented to the court showed Huckaby with a sling shot, ostensibly shooting at Cheatham's dogs. Huckaby objected on several grounds: that the tape had not been produced in discovery, that the tape was irrelevant to the issue of damages for cutting trees or any other issue presented, that the tape was unfairly prejudicial and could confuse the jury, and that it was not proper impeachment. After a bench conference during which the tape was reviewed, Huckaby's counsel added that the tape did not even show Huckaby but rather Moynihan. The court overruled the objection and allowed the tape to be shown and allowed Huckaby to be cross-examined on the content of the video.

Huckaby contends on appeal that the tape should not have been allowed. She does not appeal the decision on the motion in limine. We find that Huckaby opened the door to cross-examination on the information that she introduced during her direct examination.

A party whose motion in limine was erroneously denied may decide to introduce the information in an attempt to explain it to the jury without being found to have later "opened the door" to introduction of evidence on that topic. *Turner v. W. E. Pruett Co.*, 202 Ga. App. 287, 289 (2) (414 SE2d 248) (1991). As stated in *Turner*:

[A]ppellant's counsel was merely reacting to the erroneous denial of the motion in limine. It was the erroneous ruling on the motion in limine that opened the door and forced appellant's counsel to attempt to explain to the jury in his opening statement the timing of the filing of the complaint.

Id.

But, *Turner* is distinguishable because in that case the appellant raised the denial of the motion in limine on appeal. Huckaby has not; she only appeals introduction of the videotape and the questioning based on the videotape. The issue of whether Huckaby was forced to open the door on the pertinent testimony by the denial of her motion in limine is dependent on a finding that the motion was erroneously denied. Because we must assume that the motion was *properly* denied, Huckaby was at liberty to open the door to irrelevant testimony, and we find that she did. Therefore, allowing the subsequent cross-examination with use of the videotape was within the trial court's discretion. "Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors." (Citation

omitted.) *American Multi-Cinema v. Walker*, 270 Ga. App. 314, 319 (605 SE2d 850) (2004). The evidence was arguably relevant to rebut or complete the information presented by Huckaby on direct.

*Judgment affirmed in part, reversed in part and case remanded with direction. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 15, 2005 —
RECONSIDERATION DENIED APRIL 13, 2005.

*Rumsey & Ramsey, Penelope W. Rumsey*, for appellant.
*Mabry & McClelland, Robert M. Darroch, Samantha R. Johnson*, for appellee.