**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2507. DAVISTA HOLDINGS, LLC v. CAPITAL PLAZA, INC.

BRANCH, Judge.

This case concerns a piece of real property located in Thomas County and owned by Davista Holdings, LLC. Davista's property is surrounded on three sides by property owned by Capital Plaza, Inc. Davista took title to its property subject to certain restrictive covenants contained in a 1989 warranty deed and subject to a 1989 Access and Parking Easement Agreement (the "Easement Agreement"). Davista filed this action seeking a declaratory judgment that certain provisions in the Easement Agreement constitute restrictive covenants that expired by operation of law 20 years after their creation. The trial court denied Davista's request for relief and entered summary judgment in favor of Capital Plaza. Davista now appeals from that order.

We find that some of the provisions at issue grant Capital Plaza easements on, over, and across Davista's property for parking, ingress, egress, and pedestrian and vehicular traffic. To the extent that the trial court's order reaches this same conclusion, that order is affirmed. We further find, however, that other provisions contained in the Easement Agreement constitute restrictive covenants, and that these provisions therefore expired by operation of law, 20 years after their creation. To the extent that the trial court's order holds otherwise, that order is reversed.

The facts in this case are undisputed. The record shows that Davista owns a 2.1 acre parcel of property on which is situated a single building housing a fast food restaurant. Davista's property is surrounded on three sides by property owned by Capital Plaza and on which is situated a shopping center. Davista's predecessor in title, DeCar, Inc., acquired the property from Capital Plaza's predecessor in title, GW Acquisition Corp., by way of a warranty deed executed on June 28, 1989. The 1989 warranty deed contained 11 restrictive covenants that effectively prohibited DeCar and it successors from using the majority of the property as anything other than a driveway, thoroughfare, or parking lot. Under the terms of the warranty deed, however, these restrictive covenants expired on June 25, 2009.

Contemporaneously with the execution of the 1989 warranty deed, DeCar and GW Acquisition entered into the Easement Agreement. Paragraph 1 of that agreement provides:

> DeCar, Inc. hereby creates, grants and conveys to GW Acquisition Corporation over all portions of the real property [conveyed to DeCar] except those portions [on which the existing building sits], *a non-exclusive easement*, in perpetuity, for pedestrian and vehicular access, ingress and egress in, to, over, across and through said property. DeCar, Inc. also creates, grants and conveys unto GW Acquisition Corporation *a non-exclusive easement* in perpetuity for parking *on all portions of the real property [conveyed to DeCar] except those portions [on which the existing building sits]*. Said easements shall inure to the benefit of GW Acquisition Corporation, its successors and assigns, for their use and the use of the various tenants, business invitees, licensees and patrons of Gateway Shopping Center. *DeCar, Inc. further agrees that it shall not change or alter the location or direction of the driveways and thoroughfares or otherwise place any landscaping or physical barriers which will change the vehicular traffic or diminish in number the parking spaces on those portions of the real property [conveyed to it] which are not designated as [the existing building], without the express written approval of GW Acquisition Corporation, its successors and assigns.*

(Emphasis supplied.)

3

The Easement Agreement further provides that GW Acquisition grants DeCar nonexclusive, perpetual easements over and on its property "for pedestrian and vehicular access and ingress in, to, over, across and through all driveways and thoroughfares located [thereon] . . . together with the nonexclusive right to use all parking spaces located on the property."

Davista purchased the property on July 31, 2008, subject to both the terms of the 1989 warranty deed and the Easement Agreement.[1] Following the expiration of the restrictive covenants contained in the 1989 warranty deed, Davista made plans to make improvements to, place new signage on, and subdivide the property. Capital Plaza objected to the planned changes on the grounds that they would violate the Easement Agreement, and it threatened to sue Davista if it proceeded. Davista then filed the current action seeking declaratory relief. Specifically, Davista argued that certain provisions of the Easement Agreement constituted restrictive covenants and

---

[1] The warranty deed conveying the property to Davista states that its reference to the Easement Agreement "does not imply that the Agreement is still valid and binding, nor shall this reference thereto act as a re-recordation, continuation, or extension of the terms of said Agreement beyond the Agreement's original period of effectiveness."

therefore expired 20 years after their creation, pursuant to OCGA § 44-5-60 (b).[2] Davista moved for summary judgment on its claim, and Capital Plaza filed a cross-motion for summary judgment. The trial court thereafter entered an order containing no legal analysis, granting Capital Plaza's motion for summary judgment, and denying Davista's motion. This appeal followed.

Because the Easement Agreement constitutes a contract, its interpretation "is a matter of law for the court." (Punctuation and footnote omitted.) *Nesbitt v. Wilde*, 306 Ga. App. 812, 813 (703 SE2d 389) (2010). See also *Hardman v. Dahlonega-Lumpkin County Chamber of Commerce*, 238 Ga. 551, 553 (2) (233 SE2d 753) (1977). And in construing this agreement, we interpret its terms using "their plain, ordinary, and popular sense." (Punctuation and footnote omitted.) *Nesbitt*, supra at 814. Additionally, with respect to this particular contract, we must bear in mind "the general rule . . . that the owner of land has the right to use it for any lawful purpose" and that Georgia law does not favor "restrictions on private property." (Punctuation

---

[2] That statute provides, in relevant part: "[C]ovenants restricting lands to certain uses shall not run for more than 20 years in municipalities which have adopted zoning laws nor in those areas in counties for which zoning laws have been adopted; . . . ." The parties agree that the property at issue is located in the City of Thomasville, which adopted zoning laws in 1958.

omitted.) *Charter Club on the River Home Owners Assn. v. Walker*, 301 Ga. App. 898, 899 (689 SE2d 344) (2009).

The question presented by this appeal is whether the provisions of the Easement Agreement that purport to restrict Davista from using any part of its property, other than that part on which the existing building sits, for anything other than a driveway, thoroughfare, or parking lot, constitute easements or restrictive covenants. An easement grants an affirmative right "to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." RESTATEMENT 3d PROPERTY (Servitudes) § 1.2 (1); see also comment (b). Conversely, a restrictive covenant, also known as a "negative easement," does not convey any affirmative rights. Id., § 1.2 (4); see also comment (h). Rather, it restricts the rights of a landowner by limiting the use he may make of his property. Id., § 1.3 (1). As this Court has previously explained:

> A restrictive covenant relates to a burden or 'servitude' upon land, while an easement relates more to the benefit conferred upon the dominant tenement. Further, an easement . . . differs from a restrictive covenant in that it only requires the servient tenant not to interfere with the reserved rights of the dominant owner. A restrictive covenant [,] [on the other hand,] generally sets limits upon the use of the subject property.

(Citations and punctuation omitted.) *Brown v. Dept. of Transp.*, 195 Ga. App. 262, 264 (393 SE2d 36) (1990).

The relevant paragraph of the Easement Agreement, set forth above, consists of two distinct parts. The first part, comprised of the paragraph's first three sentences, constitutes easements; specifically, this part confers a benefit on Capital Plaza's property and grants Capital Plaza affirmative rights. It creates and grants non-exclusive easements "for pedestrian and vehicular access, ingress and egress in, to, over, across and through" Davista's property and for parking on that property. See, e.g., id. at 264 (an "easement relates more to the benefit conferred upon the dominant tenement") (citation and punctuation omitted). See also *Higginbotham v. Knight*, 312 Ga. App. 525, 528 (719 S.E.2d 1) (2011) (whether a document creates an easement is a question of law for the court).

The second part of the paragraph is comprised of the fourth and final sentence, which begins "DeCar, Inc. *further agrees that it should not change or alter . . . .*" (Emphasis supplied.) Unlike the language contained in the sentences that precede it, the language in this fourth sentence creates no affirmative right. Rather, this language operates solely to restrict the rights of Davista, as the landowner, by limiting the use of its property. Specifically, this language bars Davista from using any portion of its

7

approximately 2 acre property, except for the part on which the current building is located, for anything other than a driveway, thoroughfare, or parking lot. Accordingly, this language represents a restrictive covenant that expired by operation of law 20 years after its creation, or on June 26, 2009. See *Brown*, supra at 264 (if language operates to set limits on the use of the subject property, then such language constitutes a restrictive covenant); OCGA § 44-5-60 (b).

Finally, we note that we are making no determination as to the scope of the ingress, egress, access, and parking easements created in favor of Capital Plaza and running across, over, and on Davista's property. Specifically, we do not decide whether Davista's proposed changes to the property are, in fact, prohibited by those easements, as that question is not before us.[3]

_____

[3] We note that under Georgia law the grantor of an easement may not "do anything which would 'materially interfere' with the easement holder in the enjoyment of the easement." (Citation omitted.) *Upson v. Stafford*, 205 Ga. App. 615, 616 (422 SE2d 882) (1992). But Georgia law also holds that unless an easement is exclusive, "the grantor may construct buildings or other improvements on the land which do not 'substantially interfere' with the enjoyment of an easement previously granted." (Citations omitted.) Id. See *Fairfield Corp. No. 1 v. Thornton*, 258 Ga. 805 (374 SE2d 727) (1989) (the owner of the land, upon which the easements sits, may develop his property, except to the extent that such development would interfere with the easement); *East Beach Properties v. Taylor*, 250 Ga. App. 798, 801 (2) (552 SE2d 103) (2001). See also *Daiss v. Bennett*, 273 Ga. App. 784, 787 (2) (616 SE2d 114) (2005) (recognizing "the general principle that the holder of an easement must be *adversely affected, or substantially or materially interfered with,* in order to enjoin another owner's unauthorized use") (citation and punctuation omitted; emphasis original).

We therefore affirm the trial court's order to the extent that it holds that the first three sentences of the first paragraph in the Easement Agreement grant Capital Plaza easements on, over, and across Davista's property for parking, ingress, egress, and pedestrian and vehicular traffic. We reverse the trial court's order, however, to the extent that it holds that the fourth and final sentence of the first paragraph in the Easement Agreement constitutes an easement, rather than a restrictive covenant that expired by operation of law, 20 years after its creation.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Ray, J., concur.*