**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2015**

# In the Court of Appeals of Georgia

A14A2069. DOUBLE BRANCHES ASSOCIATION, INC et al. v.
JONES et al.

RAY, Judge.

Double Branches Association, Inc., a homeowners association of the Double Branches Subdivision in Greene County, along with several of the subdivision's residents (collectively, the "Association"), sued Double Branches Water, LLC, a private water company, and its past owners (collectively, "Double Branches Water") for alleged breaches of a 1991 Trust Indenture Water Services Agreement (the "Agreement") entered into between the developer of the Double Branches subdivision and Double Branches Water. The Association claimed that these breaches occurred when Double Branches Water added certain fees and raised the rates for water service to the subdivision's homes above the maximum amount allowed by the Agreement.

Double Branches Water filed a motion for summary judgment and a petition for declaratory judgment. The trial court granted Double Branches Water's motion for summary judgment without making findings of fact or conclusions of law. Finding that the Agreement constituted a "covenant running with the land," the trial court granted the petition for declaratory judgment on the grounds that the terms of the Agreement were no longer enforceable under OCGA § 44-5-60. For the following reasons, we affirm.

Summary judgment is warranted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Punctuation and footnote omitted.) *Calhoun, GA NG, LLC v. Century Bank*, 320 Ga. App. 472, 472-473 (740 SE2d 210) (2013).

The record shows that in 1991, the developers of the Double Branches Subdivision entered into a Trust Indenture/Water Services Agreement with Andrew Jones d/b/a Jones Water Systems,[1] a private water supplier. The Agreement was for the purpose of providing water to the homes built in the Double Branches

---

[1] Jones d/b/a Jones Water Systems subsequently assigned his interest in Double Branches Water to Double Branches Water, LLC. For the purposes of this opinion, we shall refer to both organizations as "Double Branches Water."

subdivision. The Agreement was then recorded in the deed book in the office of the Clerk of the Superior Court of Greene County.

Pertinently, the Agreement provides that "the benefits and obligations identified [in the Agreement] become an appurtenance to and run with the land described . . . and inure to the benefit of the successors in title[.]" The Agreement notes that Double Branches Water constructed two wells and infrastructure related to providing private water service to the subdivision and that it "covenants and agrees to furnish water" to the homes "until the operation of said system is otherwise made available to the property by a municipality, or other governmental agency . . . or public utility." In exchange for the "privilege and right" to use the water, lot owners "will be responsible for the installation, maintenance, and expense of their own water lines" as well as pay applicable fees. Additionally, the Agreement bound each lot owner to pay for water consumed on its premises as follows: "[Double Branches Water] shall have the right to . . . charge a minimum rate for the first 3,000 gallons used per month based on the highest rate charged for such amounts by any municipality . . . within a fifty (50) mile radius." It further provides that Double Branches Water has the right to adjust the minimum rate from "time to time," but that such rate should not exceed the highest amount charged by a municipality within a

3

fifty mile radius. Finally, the Agreement provides that "this agreement shall constitute a restriction against private well systems."

The Complaint alleges that in 2012, Double Branches Water informed lot owners that the monthly minimum rates would increase to $45, that there would be an additional monthly testing fee of $2.50, and that the rates for setup fees, late fees, and reconnection fees would be increased. The Complaint alleges that these changes violated the Agreement.

In its motion for summary judgment and petition for declaratory judgment, Double Branches Water argued, inter alia, that the Agreement constituted a restrictive covenant, and thus, it expired after 20 years because the homeowners failed to renew the covenant pursuant to former OCGA § 44-5-60 (d). The trial court granted relief in favor of Double Branches Water on the grounds that the Agreement constituted a "covenant running with the land" and became unenforceable 20 years after its enactment pursuant to OCGA § 40-5-60.

1. We first note that the Association raises several arguments for the first time on appeal: namely, that the Agreement constitutes an "easement," and that Double Branches Water is estopped from raising its rates under the theory of promissory estoppel. We will not consider such arguments. See *Kahn v. Britt*, __ Ga. App. __ (3)

4

(d) (765 SE2d 446) (2014). To the extent that the Association presents arguments on appeal that were considered by the trial court, however, we will consider its enumerations of error.

2. The Association contends that the trial court erred in concluding that OCGA § 40-5-60 (b) applied to the Agreement as it did not constitute a restrictive covenant. We disagree.

Our application of the rules of construction to the Agreement is de novo. *Crabapple Lake Parc Community Assn., Inc. v. Circeo*, 325 Ga. App. 101, 104 (1) (751 SE2d 866) (2013). In construing the Agreement,

> we interpret its terms using their plain, ordinary, and popular sense. Additionally, with respect to this particular [Agreement], we must bear in mind the general rule that the owner of land has the right to use it for any lawful purpose and that Georgia law does not favor restrictions on private property.

(Citations and punctuation omitted.) *Davista Holdings, LLC v. Capital Plaza, Inc.*, 321 Ga. App. 131, 133 (741 SE2d 266) (2013).

OCGA § 44-5-60 (a) provides, generally, that covenants running with the land go to the purchaser of the land. OCGA § 44-5-60 (b) provides, in pertinent part, that,

Notwithstanding subsection (a) of this Code section, *covenants restricting lands to certain uses shall not run for more than 20 years* in municipalities which have adopted zoning laws nor in those areas in counties for which zoning laws have been adopted. . . .[2]

(Emphasis supplied.)

The trial court, in its order, correctly concluded that the Agreement constitutes a covenant that runs with the land as access to water affects the use of and enjoyment of each lot owners' parcel. See *Tenstate Distribution Co. v. Averett*, 397 F. Supp. 1227, 1231 (N. D. Ga. 1975) (applying Georgia law) ("A covenant will run with the land if it affects the value of the property or the mode of enjoyment of the property") (citation omitted). Further, the Agreement specifically provides that "the benefits and obligations identified [in the Agreement] *become an appurtenance to and run with*

---

[2] OCGA § 44-5-60 was amended in 1993 to revise subsection (d), to provide for an automatic 20-year renewal of a covenant (in subdivisions containing 15 or more individual plots) unless 51 percent of the record owners of plots affected by the covenant execute a document in proper form stating their wish that the covenant be terminated. This automatic renewal provision of the current version of "OCGA § 44-5-60 (d) cannot, however, be applied retroactively to covenants recorded before 1993, such as the ones here." (Footnote omitted.) *Britt v. Albright*, 282 Ga. App. 206, 208 (1) (638 SE2d 372) (2006). Accord *Bickford v. Yancey Dev. Co., Inc.*, 276 Ga. 814, 814-817 (1)-(2) (585 SE2d 78) (2003). The version of OCGA § 44-5-60 (d) in effect at the time the covenants at issue were recorded contains no such automatic renewal provision, and instead required lot owners to take certain affirmative steps to renew the restrictive covenant. See Laws 1991, p. 334, §1.

6

*the land* described . . . and inure to the benefit of the successors in title." See *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 413 (3) (a) (203 SE2d 597) (1973) (that subdivision developer entered into contracts with lot owners to pay monthly fees for provision of adequate, potable water through a private water company constituted a covenant running with the land because the contract contemplated that the rights set forth in the contract shall succeed to new purchaser).

However, OCGA § 44-5-60 (b)'s 20-year automatic termination period, by its express terms, does not apply to *all* covenants running with the land. Instead, OCGA § 44-5-60 (b)'s application is limited *only* to "covenants restricting lands to certain uses[,]" i.e., a restrictive covenant. See *RESTATEMENT 3D PROPERTY (Servitudes) §1.3 (3) (2000)* ("A 'restrictive covenant' is a negative covenant that limits permissible uses of land"); see also comment (e). Accord *Davista Holdings,* supra at 134. "The scope of OCGA § 44-5-60 (b) is meant to apply to both 'use restrictions' and, further, to 'building restrictions' as these appear in restrictive covenants. . . ." (Citation omitted.) *Matera Investors, Inc. v. Sunset Lake Fishing and Hunting Club,* 696 F.Supp. 1510, 1515 (III) (M.D. Ga. 1988) (applying Georgia law).

Here, although the Agreement contains no specific language stating that the lot owners must utilize their land for a particular use, it does restrict the method by which

7

they may obtain water, which is necessary for the use and enjoyment of the property. The Agreement acknowledges that water is not available to the subdivision through a municipality, other governmental agency or public utility. It further specifically provides that "this [A]greement shall constitute a restriction against private well systems on the . . . lots of Double Branches Subdivision." Because the Agreement's restriction against wells effectively prohibits the subdivision's lot owners from obtaining water from other sources until a public utility becomes available to the property and obligates lot owners to pay the established rates, it constitutes a restrictive covenant affecting the use of the lots within the subdivision. See *Murawski v. Roland Well Drilling, Inc.*, 188 Ga. App. 760, 763 (2) (374 SE2d 207) (1988) (finding that a contract between a subdivision developer and a private water company preventing lot owners within a subdivision from digging a well, accessing public utility water, constructing an alternate private water system, or otherwise obtaining water from a source other than the private water company constituted a restrictive covenant). Compare *Argyle Realty Co. v. Cobb County School Dist.*, 259 Ga. 654 (386 SE2d 161) (1989) (OCGA § 44-5-60 (b)'s time limitation did not apply to deed under which grantor specified that school building erected on property must be operated under certain name; restriction applied only to uses of land and name of

8

school was not a use); *Matera Investors, Inc.,* supra.at 1515 (III) (20-year statutory limitation in OCGA § 44-5-60 (b) does not render any of grantor hunting club's reserved rights or interest in parcel unenforceable, where deed contained no language which stated that fee owner had to use land for any particular purpose, but rather fee owner could put land to any use whatsoever so long as it did not violate club's rights under the deed).

The Association cited *Davista Holdings,* supra, for the proposition that to the extent the Agreement's prohibition against private wells could be construed to be a restrictive covenant, it should be considered separately from the rest of the Agreement. We find this unavailing. In *Davista Holdings*, the easement agreement set forth easements for pedestrian and vehicular access and a restrictive covenant limiting the landowner from using a portion of its property for anything other than a driveway, thoroughfare, or parking lot. Id. at 132-133. However, unlike the easement agreement in *Davista Holdings*, the Agreement in the present case does not "consist[] of two distinct parts," Id. at 134, but instead all of the provisions relate to the method by which lot owners in the Double Branches subdivision can obtain water.

Based upon the above, we find that the Agreement constituted a restrictive covenant limiting each lot owner's options for obtaining water necessary for the use

and enjoyment of his or her property. Accordingly, we find that the terms of the Agreement ceased to be enforceable in 2011 pursuant to OCGA § 44-5-60 (b) when because the homeowners failed to renew the covenant as required by OCGA § 44-5-60 (d). Accordingly, we affirm the trial court's judgment.

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*