**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 6, 2023**

# In the Court of Appeals of Georgia

A23A0292. ANDERSON et al. v. DAVID et al.

PHIPPS, Senior Appellate Judge.

In this property dispute between neighbors, plaintiffs Tracy and Claire Anderson appeal from a trial court order denying their motion for partial summary judgment and granting defendants Stacey and Jean-Noel David's motion for partial summary judgment. The Andersons assert that the trial court erred in construing easements burdening their property to convey sole and exclusive rights to use and possess the easement areas to the Davids, thus stripping the Andersons' rights, as fee simple owners, to use or possess those areas. For the reasons that follow, we reverse the trial court's decision.

Construction of the easements in this case is a question for the court. *Huckaby v. Cheatham*, 272 Ga. App. 746, 749 (1) (612 SE2d 810) (2005). "When reviewing

a trial court's determination of legal issues, we consider such questions de novo and owe no deference to a trial court's legal analysis." Id. (citations and punctuation omitted).

The facts surrounding the easement grants are not in dispute. On April 18, 1996, predecessor owners of the properties at issue here — known as Lots 11 and 12 — entered into an Easement Agreement establishing two easements burdening Lot 11 for the benefit of Lot 12. Easement 1 provides as follows:

> Grantor hereby grants, bargains, sells and conveys to Grantee, his successors and assigns, for the benefit of and as an appurtenance to the Grantee Property, a perpetual exclusive easement over, across and under Easement Area One. Grantee may use Easement Area One in the same manner as it is presently being used by Grantee, which uses include, but are not necessarily limited to, a drive-way, parking and turnaround area serving the Grantee Property. Grantee shall have the right to maintain or cause to be maintained all existing improvements and structures located within Easement Area One, including, but not limited to, replacing and repairing stones in the drive-way and parking area, replacing and repairing bricks in the wall surrounding the drive-way and parking area and replacing, repairing or maintaining all other structures existing in Easement Area One as of the date hereof[,] including but not limited to

support structures. Grantor acknowledges and agrees that Grantor shall have no right to interfere with Grantee's use of Easement Area One.[1]

Easement 2 provides as follows:

> Grantor hereby grants, bargains, sells and conveys to Grantee, his successors and assigns, for the benefit of and as an appurtenance to the Grantee property, a perpetual exclusive easement over, across and under Easement Area Two. Grantee may use Easement Area Two for any legal purpose whatsoever which uses may include, but shall not be limited to the construction, installation and use of a driveway connecting the Grantor Property to West Andrews Drive, provided that such construction, installation or use is not in violation of then current building and zoning requirements. Grantee shall have the right to maintain or cause to be maintained all improvements and structures it elects to construct within Easement Area Two. Grantor acknowledges and agrees that Grantor shall have no right to interfere with Grantee's use of Easement Area Two.[2]

The Easement Agreement specifically notes that "[t]he easements created hereby shall be exclusive, in perpetuity (unless mutually terminated by the parties hereto or their successors in title), running with the land for the benefit of the Grantee Property and

---

[1] Easement 1 is located behind the Andersons' house and includes a wall and a portion of the Davids' driveway, including a parking pad and turnaround area.

[2] Easement 2 is located at the southernmost portion of the Anderson Property and runs from West Andrews Drive to the Davids' back yard.

burdening the Grantor Property." The Agreement also states that the "Grantor shall be obligated to pay ad valorem taxes on the Grantor Property, including, but not limited to, those taxes applicable to the Easement Areas."

In September 2018, the Andersons acquired Lot 11, located at 3550 West Andrews Drive in Atlanta ("Anderson Property"). The Limited Warranty Deed states that the Anderson Property is "[s]ubject to all easements, rights of way, and restrictive covenants of record." In addition, the legal description attached to the deed states that the Anderson Property (Lot 11) is "[s]ubject to that certain Easement Agreement . . . dated April 18, 1996[.]"

In March 2020, Jean-Noel David acquired Lot 12, located at 3377 Habersham Road in Atlanta ("David Property").[3] The Limited Warranty Deed states that the David Property is "[s]ubject to all easements, rights of way, and restrictive covenants of record" and specifically notes that the deed is "[s]ubject to that certain Easement Agreement . . . dated April 18, 1996[.]" That same day, Jean-Noel David signed a warranty deed creating joint ownership of the David Property with Stacey David.

---

[3] The deed references the David Property as Lot 115, but the plat refers to the property as Lot 12, and the parties do not dispute that this tract is the one referred to as Lot 12 in the April 1996 Easement Agreement.

That deed also states that the David Property is "[s]ubject to that certain Easement Agreement . . . dated April 18, 1996[.]"

After the Davids acquired their property, they began construction work, and the Andersons complained about the Davids' use of Easement 2 and their purported ingress and egress on non-easement property. The neighbors had several acrimonious interactions, and in February 2021, the Davids, through counsel, sent the Andersons a cease and desist letter, demanding that they stop interfering with the "exclusive and sole use of the easement areas by the Davids." The letter further alleged that the Andersons had trespassed on the David Property and "property rights in the easement areas" and had engaged in the clearing and cutting of trees, the installation of fencing and lighting, and the operation of surveillance cameras adversely to the Davids' property rights.

Thereafter, in April 2021, the Andersons sued the Davids for trespass, attorney fees, and punitive damages. They further sought to quiet title to Easement 2 in their favor and to obtain a judgment declaring that Easement 2 had been abandoned or, in the alternative, declaring the parties' rights, duties, obligations, and interests with respect to both easements. The Davids answered and counterclaimed for interference with easement rights, trespass, and conversion, seeking attorney fees, punitive

5

damages, and injunctive relief.      The Andersons subsequently moved for partial summary judgment on their declaratory judgment claim and the Davids' counterclaims, seeking a ruling that they are entitled to use the easement areas as long as they do not interfere with the Davids' use. The Davids filed a cross-motion for partial summary judgment, seeking a ruling that the Andersons do not have any right to use the easement areas. Following a hearing, the Special Master submitted a report recommending that both motions be denied and suggesting constructions applicable to both easements. According to the Special Master, the use of the word "exclusive" in the easements is ambiguous as to whether it excludes the Grantor from any possessory interest or right of use in the easement areas. The Special Master further concluded that jury questions existed as to what limitations on the Andersons' use are essential to the Davids' reasonable enjoyment of the easements.

The trial court, however, declined to adopt the Special Master's recommendation and instead entered an order denying the Andersons' motion for partial summary judgment and granting the Davids' motion. While recognizing that "[e]xclusive easements are only indirectly defined in Georgia case law," the court concluded that the term "exclusive easement" as used in the Easement Agreement is unambiguous and "restrains the grantor from conducting *any* activity in the easement

6

area, regardless of whether it materially interferes with the grantee's enjoyment." (Emphasis in original.) The Andersons appeal from this decision.

In their sole enumeration of error, the Andersons argue that the trial court erred by construing the easements at issue to convey sole and exclusive rights to use and possess the easement areas to the Davids, effectively stripping the Andersons, the fee simple owners of the property, of all rights in relation to the possession and use of their property. According to the Andersons, they retain concurrent rights with the Davids to use the easement areas as long as their use does not interfere with the Davids' enjoyment of their easements. We agree with the Andersons.

This case is controlled by Georgia property principles. Generally, "the owner of land has the right to use it for any lawful purpose and . . . Georgia law does not favor restrictions on private property." *Davista Holdings v. Capital Plaza*, 321 Ga. App. 131, 133 (741 SE2d 266) (2013) (citation and punctuation omitted). "An easement grants an affirmative right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." Id. at 134 (citation and punctuation omitted). However, as the Supreme Court of Georgia has noted, "the right to the fee and the right to an easement in the same realty are independent of each other." *Folk v. Meyerhardt Lodge No. 314 F. & A. M.*, 218

7

Ga. 248, 249 (127 SE2d 298) (1962) (citation and punctuation omitted); accord

*Southern R. Co. v. Wages*, 203 Ga. 502, 503 (1) (47 SE2d 501) (1948) ("Ownership

of the soil and the right to an easement are independent.") (citation and punctuation

omitted). Indeed, the right to an easement generally does not impact an owner's title

to his property: "The grantee of an easement is not the owner or occupant of the estate

over which the right extends, but the right to the fee and the right to an easement in

the same realty . . . may well coexist even when vested in different persons."

*Donalson v. Ga. Power & Light Co.*, 175 Ga. 462, 462 (165 SE 440) (1932).

The Supreme Court repeatedly has addressed the relationship between a

property owner and an easement holder:

> It is established law in this State, and generally, that nothing passes as
> an incident to the grant of an easement but what is requisite to its fair
> enjoyment. Notwithstanding such a grant, there remains in the grantor
> the right of full dominion and use of the land, except so far as a
> limitation thereof is essential to the reasonable enjoyment of the
> easement granted. It is not necessary that he should expressly reserve
> any right which he may exercise consistently with a fair enjoyment of
> the grant. Such rights remain with him because they are not granted.

*Ga. Power Co. v. Leonard*, 187 Ga. 608, 610-611 (2) (1 SE2d 579) (1939) (citations

omitted); accord *Kiser v. Warner Robins Air Park Estates*, 237 Ga. 385, 387 (3) (228

8

SE2d 795) (1976); *Folk*, 218 Ga. at 249; see also *Huckaby*, 272 Ga. App. at 750 (1); *Montana v. Blount*, 232 Ga. App. 782, 785 (1) (a) (504 SE2d 447) (1998). Accordingly, Georgia courts consistently hold that "[t]he owner of the fee has the right to continue to use the land in any manner not inconsistent with the [rights granted by the easement], or which does not impair the enjoyment of the easement." *Donalson*, 175 Ga. at 462; see also *Folk*, 218 Ga. at 249 (owner of property retains the right to use a nonexclusive easement provided he does not interfere with the easement owner's right of use);[4] *Huckaby*, 272 Ga. App. at 750 (1) (grantor of nonexclusive easement retains the right to construct buildings or other improvements on the land that do not "substantially interfere" with the enjoyment of an easement previously granted) (citation and punctuation omitted); *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 433 (1) (555 SE2d 800) (2001) ("owner of land burdened by a nonexclusive easement retains a concurrent right of use and possession, except so far as a limitation thereon is essential to the reasonable enjoyment of the easement").

---

[4] Given the dearth of exclusive easement authority, we have cited nonexclusive easement decisions for these general property principles.

The case is further controlled by Georgia contract principles. "An express easement, also known as an easement acquired by grant, is an easement expressly agreed upon by contract between a landowner and another." *905 Bernina Ave. Coop. v. Smith/Burns LLC*, 342 Ga. App. 358, 368 (3) (802 SE2d 373) (2017) (citations and punctuation omitted). When construing the language in express easements, the rules of contract construction apply. Id. Generally, this presents a question of law for the court, and the cardinal rule of contract construction is to ascertain the intent of the parties. Id. To determine the true intent of the parties, all of the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and in every part is preferred. OCGA § 13-2-2 (4).

Trial courts apply a three-step process in construing a contract. First, the court decides whether the contract language is clear and unambiguous, and, if so, it enforces the contract according to its terms. See *McGuire Holdings v. TSQ Partners*, 290 Ga. App. 595, 602 (2) (b) (660 SE2d 397) (2008). If the court decides that the contract language is ambiguous, it must apply the applicable rules of contract construction, and, if after doing so the ambiguity still remains, the factfinder must resolve the ambiguity. Id.

A contract is ambiguous if the words used therein leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is open to various interpretations. On the other hand, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.

*Doxey v. Crissey*, 355 Ga. App. 891, 893 (1) (a) (846 SE2d 166) (2020) (citation and punctuation omitted). "Words generally bear their usual and common signification," OCGA § 13-2-2 (2), and courts must interpret the contract terms "using their plain, ordinary, and popular sense." *Davista Holdings*, 321 Ga. App. at 133 (citation and punctuation omitted).

Applying these property and contract principles to the construction of the easements at issue, we find that the perpetual exclusive easements do not strip the Andersons of their concurrent rights of use and possession as fee simple owners of the easement areas. We disagree with the trial court's analysis and conclusion that the word "exclusive" as used in these easements precludes the Andersons, as fee simple owners of the easement property areas, any right to use their property. The trial court's interpretation of the word "exclusive" in these easements is tantamount to a conveyance of the land in fee simple to the Davids. Yet no such conveyance of fee

11

simple property was effectuated by the Easement Agreement. In fact, the Easement Agreement explicitly states that the Andersons retain the property in the easement areas: they are responsible "to pay ad valorem taxes on the Grantor Property, including, but not limited to, those taxes applicable to the Easement Areas." Compare *Daniel v. Ga. Power Co.*, 146 Ga. App. 596, 599-600 (4) (247 SE2d 139) (1978) (deed conveyed fee simple title rather than an easement).

The Davids and the trial court attempt to support their interpretation of the term "exclusive easement" — to mean used and possessed by the Davids to the exclusion of all others, including the Andersons — by citing dicta in numerous nonexclusive easement decisions that reads: "unless the easement is exclusive, the grantor may construct buildings or other improvements on the land which do not 'substantially interfere' with the enjoyment of an easement previously granted." *Upson v. Stafford*, 205 Ga. App. 615, 616 (422 SE2d 882) (1992); accord *Davista Holdings*, 321 Ga. App. at 135, n. 3; *Stricklett*, 252 Ga. App. at 433 (1). They infer that the use of the phrase "unless the easement is exclusive" in those nonexclusive easement decisions signifies that a grantor does not retain any right of use and possession of his land if he gives an exclusive easement. It does not appear, however, that this Court or the Supreme Court of Georgia have ever stated that the use of the term "exclusive

12

easement" alone precludes the fee simple property owner from enjoying any use and possession of land subject to an easement.

In fact, the Supreme Court has noted that in the absence of an express and unambiguous grant of the exclusive right of use and possession of the property, an easement holder cannot preclude the property owner from using his property:

> [U]nless it is provided in the instrument creating the easement that the grantee has the exclusive *right of use and possession*, the owner of the underlying fee retains a concurrent right of use and possession, except so far as a limitation thereon is essential to the reasonable enjoyment of the easement by the grantee.

*Yeomans v. Head*, 243 Ga. 266, 266 (253 SE2d 746) (1979) (emphasis supplied). And, in this case, the Easement Agreement indicates that the Andersons retain ownership of the easement areas and are responsible for the taxes on that land. Thus, the Easement Agreement did not give the Davids the right of possession; it merely gave them the right to use the easement areas as described in the easements.

We conclude — as did the Special Master in this case — that as a general rule, unless it is expressly provided that the grantee has the exclusive "right of use and possession," (i) nothing passes to the grantee of the easement except what is requisite to his fair enjoyment of the easement, and (ii) the grantor retains the right of full

13

dominion and use of his land as long as he does not interfere with the grantee's reasonable enjoyment of the easement. In other words, unless a document clearly and unequivocally shows an intent on the part of the grantor to relinquish all rights of use and possession in the easement property areas, the word "exclusive" should not be interpreted to exclude the fee owner of the property. See *Richardson v. Ga. Power Co.*, 308 Ga. App. 341, 343 (3) (708 SE2d 10) (2011) ("Any restrictions on an owner's use of land must be clearly established and strictly construed in the owner's favor."). This holding comports with Georgia property principles. In short, while an exclusive easement precludes a grantor from giving third parties any rights to the portion of the property covered by the easement at issue that overlap with the rights granted in the easement, the use of the term "exclusive easement" does not, without more, affect a property owner's concurrent rights to use that part of his property that is subject to an easement, as long as his use does not violate the terms of the easement and interfere with the easement holder's actual use. See *Folk*, 218 Ga. at 249-250; *Richardson*, 308 Ga. App. at 343 (2) (owner of the property "has a right to enter it and enjoy it, to the extent that his use does not violate the terms of the easement"). Holding otherwise would effectively convert all exclusive easements into fee simple interests in the easement property, which is not authorized under Georgia law.

14

Our conclusion that the term "exclusive easement" is defined to permit use and possession by both the Grantor and the Grantee is supported by the Georgia property principles stated above and a Supreme Court decision involving an exclusive easement. In *Sams v. Young*, 217 Ga. 685, 686 (124 SE2d 386) (1962), the Court addressed the effect of an exclusive easement on a fee simple property owner. Although the easement in that case also reserved rights to the property owner, the Court squarely commented on how to interpret an exclusive easement:

> While the conveyance does not state in express terms that the easement for the road therein granted is exclusive, except as to the grantor, we think that its purpose and intent was to convey to the [easement holder] the right to use the road, to the exclusion of all others except the [property owner] and the [easement holder's] officers, agents, servants, employees, and invitees.

Id. at 686.

In this case, the Easement Agreement does not state in express terms that the grantee has the exclusive right to use and possess the easement areas or that the grantor has no right to use and possess the easement areas. In fact, the only restriction on the Andersons' right to use either easement is that such use cannot interfere with the Davids' use as defined in the easements: "Grantor acknowledges and agrees that

15

Grantor shall have no right to interfere with Grantee's use of [the easement areas]." We therefore find, as the Court did in *Sams*, that the purpose and intent of the exclusive easements here was to convey to the Davids the right to use the easement areas, to the exclusion of all others except the Andersons and the Davids' officers, agents, servants, employees, and invitees. *Sams*, 217 Ga. at 686. The exclusive easements constituted a promise by the Grantor not to give the same easements to anyone else; they did not constitute a promise by the Grantor that he would not continue to possess or use the easement areas. This is apparent from the Easement Agreement language recognizing that the Andersons retained the property title and obligating them to pay property taxes on the easement areas.

Moreover, although the Grantor did not explicitly reserve any rights in the easements at issue in this case, it is not necessary for the owner of land to make any reservations to protect his interests in the land because he still retains ownership and the right to use his land unless he has conveyed fee simple title to the land. See *Folk*, 218 Ga. at 249; *Leonard*, 187 Ga. at 610-611 (2). In fact, the Supreme Court has recognized that "unless the grantor, by expressly reserving certain rights, has limited his privileges to those enumerated, . . . the rights of the parties are governed by" general property rules, and "[t]he full right to enjoy the land in any way not

16

inconsistent with the [grantee's] easement remain[s] with the . . . owner of the fee, simply because it was not granted." *Leonard*, 187 Ga. at 611 (2).

When read as a whole, the proper construction of the easements in this case confirms that the Easement Agreement gave the Davids perpetual exclusive *easements*, and not title to the land or the right to exclusive use and possession against the Andersons, as fee simple owners of the easement areas. In fact, the word "exclusive" in the Easement Agreement does not modify the word "use" but rather modifies the word "easement." And the easements do not explicitly give the Davids exclusive possession of the easement areas or limit the Andersons' privileges to their property. In other words, nothing in the language of the easements negates the general property principle that the grantor retains all rights not granted. The only reasonable interpretation of the phrase "perpetual exclusive easement" in this case that squares with Georgia property rights is that the Grantor and Grantee intended that no other easements would be given by the Grantor for the property rights subject to the easement. It is the easement that is exclusive, not the use or possession of the land. Accordingly, under the terms of the Easement Agreement, the Andersons, as fee simple owners of the easement areas, have a concurrent right to use and possess the easement areas, as long as their use does not interfere with the Davids' use as defined

17

by the easements. See *Upson*, 205 Ga. App. at 617 ("[T]he holder of an easement must be adversely affected, or substantially or materially interfered with, in order to enjoin another owner's unauthorized use."). The trial court erred in ruling otherwise.

Having concluded that the Andersons retain the right to possess and use their property to the extent that such use does not interfere with the Davids' easement rights, the questions turn to (i) what easements rights were given to the Davids, (ii) whether their use of the property complies with these easement rights, (iii) and whether the Andersons' use adversely affects or substantially or materially interferes with the Davids' easement rights. Whether an easement can be reasonably enjoyed by the grantee with the grantor using it in common with the grantee is generally a question for determination by a jury. *Folk*, 218 Ga. at 250. This is especially true because a broad easement, such as the ones at issue here, can encompasses the Davids' use of the land in multiple ways. See *905 Bernina Ave.*, 342 Ga. App. at 369-370 (3) (the manner of use within the physical boundaries of an easement may change to include the authority to do those things that are reasonably necessary for the enjoyment of the easement granted). We do not decide whether any of the Davids' actions are inconsistent with their easement rights or any of the Andersons' actions interfere with the Davids' easement rights, as those questions are not presently before

18

us. Moreover, this Court cannot prospectively define what the Andersons may do with their property without violating the Davids' easement rights because such a ruling would be an advisory opinion. See *East Beach Properties v. Taylor*, 250 Ga. App. 798, 801-802 (3) (552 SE2d 103) (2001) (trial court properly found that it could not define what an owner could do with his property without violating the easement holders' rights because such a ruling would be an advisory opinion, which is prohibited under the Declaratory Judgment Act).

*Judgment reversed. Doyle, P. J., and Gobeil, J., concur.*